# OHIO CENTRAL RAILROAD COMPANY *v.* CENTRAL TRUST COMPANY OF NEW YORK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 1288. Submitted December 23, 1889.—Decided January 20, 1890.

A bill in equity for the foreclosure of a mortgage of a railroad for non-payment of overdue interest, the principal being payable at a future day, was taken *pro confesso*, the company appearing but not answering. A sale was made under the decree of the court, and, it appearing that there was a surplus over and above what was necessary to pay the overdue interest, costs and expenses, the court ordered it to be applied to the reduction of the principal sum due upon the bonds, and entered a decree that the balance of such principal sum, remaining after such application, was due and payable from the company to the holders of the bonds, and that the trustee recover it for them, with interest until paid; *Held:*

(1) That the application of the surplus was properly made;
(2) That the decree, declaring the remainder of the principal sum due and immediately payable, was irregular and was not warranted by the pleadings.

The defendant in a bill in equity, taken *pro confesso*, is not precluded from contesting the sufficiency of the bill or from insisting that the averments contained in it do not justify the decree.

A decree on a bill taken *pro confesso* may be attacked on appeal, if not confined to the matter of the bill.

The 92d rule in equity does not authorize a decree to be entered in a suit in equity for the foreclosure of a mortgage for a balance due to the complainant over and above the proceeds of the sale, if, as a matter of fact, such balance has not become payable.

A railroad company, whose road, property and franchises have been sold under a decree for the foreclosure of a mortgage entered on a bill taken *pro confesso*, may prosecute an appeal from the final decree distributing the proceeds of the sale and adjudging a balance still due the mortgage creditors.

THE case, as stated by the court, was as follows:

The Central Trust Company of New York filed its bill on the 7th day of January, A.D. 1884, in the Circuit Court of the United States for the Northern District of Ohio against The

Ohio Central Railroad Company, alleging the creation prior to January 1, 1880, of a corporation by that name, and its execution on January 1, 1880, of three thousand bonds for one thousand dollars each, bearing that date and payable to bearer on January 1, 1920, at six per cent interest, payable semi-annually on the first days of January and July, to secure which it executed and delivered to the Central Trust Company a deed of trust and mortgage covering the main line of said Ohio Central Railroad, which mortgage was duly recorded. The bill also alleged that the original Ohio Central Railroad Company, subsequently to the first day of January, 1880, and to the execution and delivery of the bonds and mortgage thereinbefore described, made and entered into an agreement of consolidation with a corporation known as the Atlantic and Northwestern Railroad Company, under the name of The Ohio Central Railroad Company. It further alleged default in the payment of interest on the said bonds, January 1, 1884; that the coupons were duly presented and payment was demanded, but refused; and that about the first of January, 1880, the defendant executed and delivered a second mortgage on the same property, to the same trustee, to secure three thousand income bonds for one thousand dollars each, payable to bearer, which was duly recorded; that the holders of these income bonds were very numerous and unknown to complainant; and that their interest and lien and that of complainant as their trustee accrued subsequently to and subject to the lien of the first mortgage. The bill set forth the insufficiency of the mortgaged property to pay the mortgage debts; that there was a large floating indebtedness; that creditors had commenced legal or equitable proceedings for the enforcement of their claims; that complainant had commenced a suit for the foreclosure of a certain other mortgage upon a portion of the property not embraced or covered by the two mortgages first mentioned, in which a receiver had been appointed; and that a multiplicity of suits, judgments and liens would obstruct the operation of the road and cause great loss to the holders of the bonds and sacrifice of property, etc.

The bill prayed for an answer; that an account be had of

the bonds secured by said several mortgages, "and of the amount due on said first mortgage bonds for principal and interest or either;" that the names of the holders of said bonds might be ascertained and an account taken of all the liens and incumbrances according to their priorities; that said first mortgage be decreed to be a first lien upon all the property described therein; that the property be sold free from the claims of all parties or all who were in any manner represented; that the defendant and others claiming under it be barred and foreclosed; "that the said judgment or decree may contain such provisions for the ascertainment of the priorities of the said incumbrances and of the due application of the proceeds of such sale according to the rights of the parties as may be just and equitable;" that a receiver might be appointed, and an injunction issue *pendente lite;* and a prayer for general relief. A copy of the first mortgage, including bond and coupon, was attached to the bill.

The defendant, The Ohio Central Railroad Company, having entered its appearance, and having failed to plead, answer, or demur, the bill was taken as confessed, and, on the 10th day of December, 1884, a decree for sale was duly entered in the cause. The decree accorded with the averments of the bill, and adjudged that the default continued after the commencement of the suit, and that two instalments of interest on the first mortgage bonds were due and unpaid, by reason of the default as to the first of which the mortgage or deed of trust had become absolute, and the complainant entitled to a decree for the sale of all the mortgaged property "to satisfy the principal and interest of said bonds secured by said main-line first mortgage." The decree directed payment within thirty days of the amount of the two instalments of interest due, with interest and costs, and in default of such payment ordered the sale of the mortgaged property and the application of the proceeds to costs of suit, expenses of sale, trustees' compensation and expenses; claims having priority over the main-line first mortgage; coupons due, and to become due before distribution, upon said first mortgage bonds; the principal of the first mortgage bonds; and the surplus, if any, to be paid into court

subject to its further order. The sale took place on April 15, 1885, and the mortgaged property was sold to Canda,. Opdyke and Burt, as purchasing trustees, for one million dollars, which sale was confirmed June 25, 1885, and the mortgaged property was conveyed to the said purchasers. Prior to the confirmation of sale, but after the sale had been reported, a reference was had to ascertain the distributive share of the proceeds of sale due on the principal of each bond secured by the first mortgage, and what sum the purchasers should bring into court to pay the distributive share of whatever bonds might be found outstanding. A report was made that after the payment of interest there would be $197.31⅔ to apply on the principal of each first mortgage bond; and in the order confirming the sale the report of the special master was confirmed, payment of compensation and expenses directed, and the balance ordered to be applied on the principal of said main-line first mortgage bonds. The last clause of this order of June 25, 1885, was as follows :

"And all further questions in respect to the accounts of said receiver and to judgment for any deficiency herein and all other questions arising in this cause are reserved until the coming in of the report of said special master commissioner of his acts and doings under this order and the filing of said receiver's account."

On the 22d of June, 1887, the following decree and judgment was entered by the court :

" This day this cause came on for further hearing, and it appearing to the court that from the proceeds of the sale of the property of said defendant company in this cause heretofore made there had been paid upon each of the three thousand bonds secured by the first main-line mortgage, in the bill of complaint set forth, the interest coupons thereon up to and including June 30th, 1885, and the sum of one hundred and. ninety-seven and thirty-one and two-thirds one-hundredths dollars ($197.31⅔) to be applied upon the payment of the principal of each of said bonds, said payment to bear date of June 30th, 1885, and that no other payments of either principal or interest have been made upon any of said bonds than as

aforesaid, the court therefore finds that there is due from said defendant, The Ohio Central Railroad Company, to the complainant, as trustee for the holders of said bonds secured by said first main-line mortgage, upon each of said bonds, the sum of eight hundred and two and sixty-eight and one-third one-hundredths dollars ($802.68⅓), which sum should bear interest at the rate of six per cent per annum until paid.

" And the court further finds that no fund has come under the control of this court from which any payment can be made upon the three thousand main-line income bonds in the bill of complaint set forth, and that no payments of any kind have been made upon any of said income bonds. Wherefore the court finds that there is due from the defendant, The Ohio Central Railroad Company, to the complainant, as trustee of the holders of said income bonds, upon each of said bonds, the sum of one thousand ($1000) dollars.

" Wherefore it is ordered, adjudged and decreed that the complainant, The Central Trust Company of New York, as trustee for the holders of said three thousand bonds secured by said first main-line mortgage, have and recover from the defendant, The Ohio Central Railroad Company, the sum of eight hundred and two and sixty-eight and one-third one-hundredths dollars ($802.68⅓) on each of said bonds, to wit, the sum of $2,408,050, with six per cent interest per annum from July 1st, 1885, and that the said complainant, as trustee for the holders of said three thousand main-line income bonds, have and recover from said defendant, The Ohio Central Railroad Company, the sum of one thousand dollars ($1000) on each of said bonds, to wit, the sum of three million dollars, and that execution issue therefor."

From this decree the pending appeal was prosecuted.

*Mr. Ashbel Green, Mr. H. L. Terrell,* and *Mr. Thomas Thacher* for appellant.

*Mr. Stevenson Burke* for appellee.

1. The record shows that the railroad property, together with the *franchises* of the company, were sold under the decree of

the Circuit Court, and that the sale so made was confirmed. The company is therefore in liquidation or insolvent, unable to meet its liabilities, its franchises mortgaged and sold. Under these circumstances there is no corporate power left in the railroad company to prosecute this or any other action.

The point is made, however, that the bonds were not due at the time execution was issued, and that, notwithstanding the fact that the railroad company is in liquidation, and not-withstanding the fact that it has been sold out and a par-tial payment made upon its bonds to fall due in the future, neither the trustee nor the holders of the bonds can proceed to execution against the railroad company in liquidation until the indebtedness evidenced by the bonds shall fall due by the terms of the bonds.

It is manifest that the only purpose of the final order was to establish a basis upon which to file a creditor's bill against the railway company and its stockholders. Confessedly the Circuit Court had full jurisdiction to ascertain and determine the amount of indebtedness remaining due and unpaid upon the bonds in question, and whether the order for execution under the circumstances is erroneous, is really the only question for consideration here. It is manifest that, so far as the final order or decree of the court determines and settles the balance due and unpaid upon the bonds, there is no error in the order, and the only error, if any, is in the ordering of execution.

2. Whether there is any error in the ordering of execution must depend upon the practice of equity courts in such cases, and upon the rules of practice established by this court. The case comes within the 92d rule, which provides, "in suits in equity for the foreclosure of mortgages in the Circuit Courts of the United States . . . a decree may be rendered for any balance that may be found due to the complainant over and above the proceeds of the sale or sales, and execution may issue for the collection of the same."

We understand this rule to provide "that a decree may be rendered for any balance that may be found due to the complainant."

By "due" we understand any existing indebtedness con-

nected with the subject of the action, whether such indebtedness is presently payable or not.

Indeed, when a corporation becomes insolvent, and its property and franchises are sold and disposed of, and there is a balance remaining unpaid to its creditors, the case is one for a court of equity to deal with, and clearly a court of equity in such a case has jurisdiction to ascertain and determine the amount remaining unpaid upon the indebtedness; and the corporation being in liquidation, being insolvent, we think the court would have the power to issue execution, collect in its assets and make the proper distribution of the same among its creditors.   The decree ordering execution should be affirmed.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

These first mortgage bonds matured January 1, 1920, and there was no provision in them nor in the mortgage that they should become due or could be declared due before that date; nor were there any allegations in the bill upon which to predicate a finding or decree to that effect.

The mortgage provided that in case of entry by the trustee for nonpayment of interest, or of principal at maturity, the income and revenue should be applied to the payment of such interest and the residue to the payment of the principal; and that, if the property went to sale, the net proceeds should be applied "to the ratable payment of principal and the then accrued interest of all the said bonds, whether the principal be then due or not;" but if, in case of entry or of proceedings to sell for default in payment of interest before the bonds should become due, and before the sale should be made, the interest in arrears should be paid and satisfied, together with all costs, expenses, etc., that then the proceedings should be discontinued and possession of the mortgaged premises restored as if default or entry had not occurred.   While, therefore, the intention is clear that the bonds were not to become due before the specified date of maturity, the proceeds of sale, after the satisfaction of the accrued amount, were properly applied upon the

outstanding liability.  *Chicago & Vincennes Railroad Co.* v. *Fosdick*, 106 U. S. 47, 68.

Neither in the pleadings nor in the reports of the special master, nor in any part of the record, can we discover the basis for the statement: " The court therefore finds that there is due from said defendant, The Ohio Central Railroad Company, to the complainant as trustee˙ for the holders of said bonds secured by said first main line mortgage, upon each of said bonds, the sum of eight hundred and two and sixty-eight and one-third one-hundredths dollars ($802.68⅓)." Certainly, as $197.31⅔ had been realized on each bond, $802.68⅓ remained to be paid, but only according to the tenor of the bond.

There are no allegations in the bill as to when the income bonds matured, nor is a copy of the second mortgage given.

The deficiency decree says that "the court further finds that no fund has come under the control of this court from which any payment can be made upon the three thousand main line income bonds in the bill of complaint set forth, and that no payments of any kind have been made upon any of said income bonds. Wherefore the court finds that there is due from the defendant, The Ohio Central Railroad Company, to the complainant, as trustees of the holders of said income bonds, upon each of said bonds, the sum of one thousand ($1000) dollars."

But the conclusion does not follow that because no payment had been made on the income bonds, therefore they had matured; and unless they had matured by lapse of time, or otherwise as provided, the amount could not be decreed to be due.

The bill was taken as confessed, but that fact did not in itself justify giving complainant more than it claimed. In *Thomson* v. *Wooster*, 114 U. S. 104, the general nature and effect of an order taken on a bill *pro confesso*, and of a decree *pro confesso* regularly made thereon, and of our rules of practice on the subject, are discussed in the opinion of the court by Mr. Justice Bradley, and it is there held that under the rules and practice of this court in equity "a decree *pro confesso* is not a decree as of course according to the prayer of

the bill, nor merely such as the complainant chooses to take it; but that it is made (or should be made) by the court, according to what is proper to be decreed upon the statements of the bill, assumed to be true." If the allegations are distinct and positive, they may be taken as true without proof; but if they are indefinite, or the demand of the complainant is in its nature uncertain, the requisite certainty must be afforded by proof. But in either event, although the defendant may not be allowed, on appeal, to question the want of testimony or the insufficiency or amount of the evidence, he is not precluded from contesting the sufficiency of the bill, or from insisting that the averments contained in it do not justify the decree.

Under the 18th rule in equity, where the bill is taken *pro confesso*, the cause is proceeded in *ex parte*, "and the matter of the bill may be decreed by the court;" and hence if a decree be passed not confined to the matter of the bill, it may be attacked on appeal for that reason.

By the 92d rule it is provided that in suits in equity for the foreclosure of mortgages, "a decree may be rendered for any balance that may be found due to the complainant over and above the proceeds of the sale or sales." Assuming that a deficiency decree might be rendered in the absence of a specific prayer for that relief, nevertheless the case made by the bill must show that the amount is due, for otherwise it cannot properly be found so. This rule does not authorize the Circuit Courts to find a balance due because partial extinguishment has been effected by a sale, if, as matter of fact, the indebtedness is not then payable.

The bill here did not seek relief as to the second mortgage, which is only referred to as a subordinate lien, nor did it claim that anything except interest was due upon the first mortgage. It sought the establishment and enforcement of the first mortgage lien and the foreclosure of the equity of redemption. The amount realized paid the outstanding interest and a part of the principal. Under such circumstances, and upon these pleadings, this deficiency decree, which is a judgment for the recovery of so much money, with execution, was improvidently entered.

Without discussing the extent of the franchises authorized to be sold under the mortgage, we are of opinion that this appeal was properly taken in the name of the defendant company. *Willamette Manufacturing Company* v. *Bank of British Columbia*, 119 U. S. 191, 197; *Memphis & Little Rock Railroad Company* v. *Railroad Commissioners*, 112 U. S. 609, 619.

The deficiency decree of June 22, 1887, is reversed at appellee's costs, and the cause remanded with directions to proceed therein as may be just and equitable.