CLYDE GARDENHIRE, *et al.*, VS. NELLIE GARDENHIRE.

1. PRACTICE IN THE SUPREME COURT—*Errors Assigned Waived*—Where errors are assigned in the petition in error but are not mentioned in the argument or brief of counsel and are not relied upon in the argument or brief for the reversal of the judgment complained of, they will be deemed waived and abandoned and will not be regarded by the supreme court.

2. A GENERAL FINDING OF FACT SUFFICIENT—A general finding includes a finding of all the necessary facts to constitute the claim of the party in whose behalf the decree is rendered.

3. PRESUMPTION AS TO ISSUES—*Pleadings Not Brought Up With Records*—Where the pleadings upon which the cause was tried in the court below are not brought up with and made a part of the record, we must presume that the issues were such as upon which the court could render the judgment which it did.

4. DIVORCE LAW—*Alimony—Priority of Liens*—Under the divorce law of this territory, adopted by the legislature in 1890, the court in rendering a decree for alimony, having the parties and the property before the court, might render a decree granting the plaintiff alimony and adjudging that the same be a prior lien to that of a chattel mortgage given by the husband to one of the defendants before the court, upon the personal property of the husband, in fraud of the rights of the wife.

*Error from the District Court of Payne County.*

*Neil & Clark* and *Buckner*, for plaintiffs in error.

*King & Miller*, for defendant in error.

The opinion of the court was delivered by

BIERER, J.: The plaintiffs in error bring this cause here on appeal from the judgment of the district court of Payne county, in which two decrees were entered against these plaintiffs in error, defendants below, one, granting Nellie Gardenhire, the defendant in error, a divorce from Clyde Gardenhire, one of the plaintiffs in error, and the other granting five hundred dollars permanent alimony to the plaintiff below,

Nellie Gardenhire, and five hundred dollars to be held in trust for her minor child, of which she was given the custody. Judgment was also rendered against the defendant, Jacob Gardenhire, declaring that the decree for alimony was a prior lien upon all of Clyde Gardenhire's personal property, including certain personal property mortgaged to the defendant below, Jacob Gardenhire. An order for temporary alimony, as shown by the record, was entered on May 5, 1893. On August 31, 1893, the decree of divorce was granted Nellie Gardenhire from Clyde Gardenhire and the cause continued until the November, 1893, term, for further trial upon the question of alimony, at which time the judgment for alimony was rendered, and the decree entered against both of the plaintiffs in error.

No part of the pleadings in the district court, or of the evidence offered upon the trial is brought to this court with the petition in error. The only parts of the record in the case which are brought to this court are the several decrees for temporary alimony, for divorce, and for permanent alimony.

The plaintiffs in error in their pleadings here assign several errors as grounds for the reversal of the judgments of the district court, but in their brief but one ground is relied upon for a reversal in this cause; and where errors are assigned for reversal of a decree of the lower court but are not noticed in argument, or relied upon in the brief of counsel, they will not be regarded or referred to by this court in determining the cause, and will be considered as waived and abandoned. ( *Wilson vs. Fuller*, 9 Kan. 176.).

The only ground relied upon by plaintiffs in error, in their brief, for a reversal of the judgment of the court below, is found in the following language in their brief:

"The court decrees a prior lien, on property under mortgage, from Clyde Gardenhire to Jacob Garden-

hire, the court declared it should be a prior lien on the property, covered by the. mortgage, without cancelling the mortgage or finding that it was a fraudulent mortgage; liens arise by operation of law; the court can only declare the law, if the law gives no lien the court cannot."

As we take it, there are two propositions of law suggested in this single connected statement.

1. That the findings of the court are not sufficient to warrant the judgment that the decree for alimony granted Nellie Gardenhire should be a prior lien to that of the chattel mortgage on certain property of the defendant, Clyde Gardenhire, in favor of the defendant Jacob Gardenhire.

2. That under the law, in no phase which this case could have assumed, could the court render such a decree granting to Nellie Gardenhire a priority of lien on the property of Clyde Gardenhire.

Both of these positions are untenable. The journal entry of the court, and which, as we have shown, is the only part of the record brought here and relied upon, contains the following, among other matters:

"Now, to-wit, on this 1st day of December, 1893, this cause came on to be heard on the application of plaintiff for alimony and to set aside the chattel mortgage given by Clyde Gardenhire to Jacob Gardenhire for the sum of $1,000.00. The plaintiff appeared by her attorneys, and the court having heard the evidence and being fully advised in the premises, finds for the plaintiff, allows her the sum of $500.00 as alimony * * * and this judgment is made a first and prior lien on all Clyde Gardenhire's personal property, including the property mortgaged to Jacob Gardenhire."

These findings and this decree are the material parts of the journal entry from which the question presented must be decided. The findings are a general finding in favor of the plaintiff below and against the defendants; and it was not necessary that the

court should have made any special findings of fact in the case, unless the same were asked for by the defendants, and it not being shown that any request was made, the presumption is that it was not. If it was necessary that the court should have determined that the chattel mortgage, given by Clyde Gardenhire to Jacob Gardenhire upon Clyde Gardenhire's personal property, was fraudulent as to the claim for alimony of Nellie Gardenhire, then such finding is included within the general findings of the court. A general finding is a sufficient finding as to all the necessary facts to entitle the party to the decree given. (*Bixby vs. Bailey*, 11 Kan. 359.)

We state the second question as we do above because the presumptions of the law are in favor of the correctness of the judgment of the court below; and if a decree is rendered and the pleadings in the case are not brought to this court with the record, the presumption is that the pleadings and issues were such as would fully justify the determination of the court, so far as the pleadings and issues could do so. (*Buecher vs. Casteen*, 41 Kan., 141.)

And as the evidence has not been brought with the record to this court, we also assume that the judgment was fully supported by the evidence in the case, leaving the only question one of law, as to whether or not such a judgment could, in any reasonable phase which the pleadings, issues and evidence could have assumed, have been rendered.

This action for divorce and for alimony must originally have been brought under the code of civil procedure of 1890, adopted for this territory, and which remained in force until August 14, 1893, because the record shows an order for alimony in the case on May 5, 1893.

Section 19, (general § 4978) of art. 31, ch. 70, of the code of civil procedure of 1890, provides:

"Sec. 19.   The court shall make such decree for alimony in all cases contemplated by this act, as the circumstances of the case shall render just and proper; and such decree for alimony heretofore made or hereinafter made shall ·be valid against the husband, whether asked for in the petition or given by the judge on default."

This section vests a very comprehensive equitable power in the court.   It shall make such decree for alimony as the circumstances of the case, as shown to the court by the evidence on the trial, render just and proper.

Section 16, of the same article and chapter, provides:

"Sec. 16.   Pending a petition for divorce, the court or judge thereof in vacation, shall make and by attachment enforce such orders for the disposition of the persons, property and children of the parties as may be deemed right and proper."   *   *   *

And as the journal entry shows that when the judgment complained of was rendered both Clyde Gardenhire and Jacob Gardenhire were before the court, as defendants, and were represented by counsel, and that a certain chattel mortgage given by Clyde Gardenhire to Jacob Gardenhire for the sum of one thousand dollars, on the property of Clyde Gardenhire, was under consideration and before the court for determination, and, as the presumptions are all in favor of the action of the court, we must presume now that such a state of affairs concerning the property of Clyde Gardenhire was brought to the attention of the court as required it, at, or prior to the determination of the cause, to make an order under § 16 referred to, concerning the disposition of the property of Clyde Gardenhire, and to prevent his improperly or fraudulently disposing of his personal property to the prejudice of the plaintiff in that action; and when the parties were all before the court, and the court had jurisdiction of the persons and of this property by

proper proceeding, as we must now presume, it was manifestly proper by the decree in disposing of the property then in litigation, and of the interests of the parties before the court, to determine the priority in which claims against his, Clyde Gardenhire's, property should be paid.

The statute referred to gives the court power to enforce, and of course to first make, such order for the disposition of the property of the parties as may be deemed right and proper.

If the court had power pending the case to make an order as to the disposition of the property, would it not, then, in the exercise of the power given it to make such decree as the circumstances of the case seem to warrant, have the power and the right, and would it not be the duty of the court to adjudge, when all parties were before it, as to whether a certain lien upon property should be prior or subsequent to that of the decree for alimony? If the court might make a complete disposition of the property of the parties, might it not make a partial disposition by way of declaring priority of claims against the property? The greater certainly includes the lesser. A lien against property is less than the entire ownership; and the right to declare a lien is less than the entire disposition. If the right under such statutes as ours then in force to prevent the disposition by a husband in a divorce suit of his property by a fraudulent mortgage is denied, then the statute may be evaded and its provisions entirely nullified, by making such a fraudulent disposition of property, as we presume from the general findings of fact in favor of the plaintiff below, the court found in this case.

The pleadings not being brought before us by the plaintiffs in error, we presume the allegations therein were sufficient to warrant the court in exercising the equitable authority and power as is indicated by the

judgment were exercised; and if such facts were shown to the court as warranted it, as we presume they were, in reaching out its protecting hand to restrain the fraudulent disposition of this property, then it would be the duty of the court in making the final disposition of the cause, not to simply dismiss the plaintiff with a decree for alimony and to let the property go from the custody of the court into the hands of the party who had shown an interest in defeating the plaintiff's claim, but to make such a decree concerning the property then before the court as would give to the plaintiff the relief which the court intended; and in doing this the court certainly might very properly order that the decree for alimony be paid before the property should again go back into the hands of one or both of the defendants, who might be, and no doubt were, interested in defeating the plaintiff's claim for alimony.

In the case of *Busenbark vs. Busenbark*, 33 Kan. 572, under the divorce law in force in this territory since August 14, 1893, and which seems to give no greater power to the court to see that right and justice is done parties than the statute of 1890, under which this action was brought, the plaintiff there brought an action for divorce against her husband, and joined in the same action numerous other defendants. The petition asked for a divorce and for alimony, and also asked, among other things, that certain judgments granted the son and daughter of the defendant be held fraudulent, and that a sale of real estate of the husband, under executions issued upon said personal judgments, be enjoined. The parties to the divorce proceeding were held to be in equal wrong, but the court, in rendering judgment, decreed that each of the parties be allowed jointly to have possession and occupancy of certain of the real estate, and that the plaintiff have the issues, rents and profits of a part of the land. It was claimed in the supreme court that

this judgment was erroneous, and the court held that under the statute the judgment was proper, and in passing on the case, among other things, said :

"If the power existed in the trial court to make any disposition of any part of the property of the husband for the benefit of the wife, the order of the court was just and reasonable."

We think the same of the case at bar. The court being vested with the authority to decree alimony in favor of the wife, and having all the parties and these transactions before it, it also had the right to make such further order and decree upon the issues then before the court as would give effect to the decree rendered and not permit parties by fraudulent conduct and transactions to render a decree futile. Courts of equity do not sit to do useless things and render decrees that will be no relief to the parties complaining; and where all the matters are before the court, as we presume they were in this case, the court had the power to render such proper decree, under a law such as the court was then administering, as would do ample right and justice.

An authority squarely in point in this case is that of *Damon vs. Damon*, 28 Wis. 510, in which the court says:

"The remaining question is whether the complaint states a cause of action against the appellant. Or, stated in another form, the question is, whether, in an action by a wife for a divorce and for alimony, it is competent to join as a defendant therein, a party who knowingly and without consideration took a conveyance of the husband's property before the action was commenced, but after the cause of action accrued, for the fraudulent purpose of defeating a recovery of alimony in such action?

"We are of the opinion that this question must be resolved in the affirmative. We do not perceive how, in such cases, the court can fully adjudicate upon and enforce the rights of the wife to alimony, or to a por-

tion of her husband's estate, if she prevails in the action, unless the court has power to bring before it as a party any person who has taken a conveyance from the husband of the very property in question for the purpose of defrauding the wife of her rights. How else can the court compel him to surrender the property thus fraudulently acquired? The learned counsel for the appellant argues, and with much plausibility, that the wife must wait until she obtains her decree of divorce and for alimony, and then she may bring into court the fraudulent grantee of the property out of which her alimony is to be collected, and compel him to disgorge. But why delay until he has an opportunity to dispose of the property and leave the country? It is urged that the power of the court in these divorce cases is limited; that it cannot exercise full equity powers, but only such as are conferred by the statute; and, inasmuch as the statute does not expressly provide that third parties may be made defendants in divorce suits, that therefore no person can be made a defendant in those actions other than a party to the marriage contract. We do not so understand the statute. We think that when the court is empowered to award alimony to the wife out of the husband's estate; to adjudge to her property, or the value of it, that came to her husband by reason of their marriage; to sequester his personal estate, and the rents and profits of his real estate, to enforce compliance with its judgment; and to divide and distribute the whole estate between the parties—that the power to bring before it as a party defendant in the same action any person who is attempting fraudulently to keep the estate, over which the court has such absolute control, away from the jurisdiction of the court and out of the reach of its judgment, must necessarily follow."

It is true that in this case, as in the case of *Busenbark vs. Busenbark*, the property affected by the decree was real estate, but if the court had authority to take charge of the real estate of a party, to bring before the court fraudulent transferees of the same and make a decree for alimony prior and superior to the claims in the land of fraudulent transferees, certainly there

can be no reason why the court might also not determine that a decree for alimony should have precedence as against the rights of a fraudulent mortgagee of personal property. There is no reason why the court should have power to make such decree when the property is real estate and not have power to make a like decree when the property is personal property. It is not the kind of property that gives the court jurisdiction to make the decree, but the facts and circumstances as they should be administered upon well defined principles of law and equity.

The statute of Wisconsin on the subject of divorce under which the court made this decision in the case of *Damon vs. Damon,* is not quoted, but while from the reference made in the decision thereto it seems to have been more specific than ours, it certainly does not vest a broader discretion in courts of equity than that of § 19, of art. 21, of our code referred to. There could be no broader statute than that which gives the court the power to make such a decree in all cases "as the circumstances of the case shall render just and proper." Many other decisions to the same effect as this might be cited to show that the decision of the court is supported by both principle and authority.

Nor was it necessary in decreeing that plaintiff's judgment for alimony be a prior lien to that of the chattel mortgage given to Jacob Gardenhire on the property of Clyde Gardenhire that this chattel mortgage should have been cancelled. The decree of the court was not that this personal property be given to Nellie Gardenhire, but it was only that she have a lien thereon, and when this lien was satisfied, of course any other lien given by Clyde Gardenhire and which was adjudged subsequent to the decree in favor of Nellie Gardenhire, would remain in full force and operation.

The chattel mortgage may have been fraudulent so

far as the rights of Nellie Gardenhire were concerned and yet be entirely valid as between Clyde Gardenhire and Jacob Gardenhire. There is nothing to show that any party to this case asked of the court that the chattel mortgage should be cancelled.

In any event this action of the court would not be a matter of which Jacob or Clyde Gardenhire could complain as against Nellie Gardenhire. If the mortgage should have been cancelled, which we do not believe is true, the fact that a less judgment was asked for against the defendants than that which was actually rendered, would not give them ground for complaint. It is only when a judgment is rendered against a party which goes beyond what the law warrants that. he may complain to this court.

Finding no error, the judgment of the district court must be affirmed.

By the Court : It is so ordered.

Dale, C. J., having presided below, not sitting; all the other Justices concurring.