OLIVER F. CAMERON v. TERRITORY OF OKLAHOMA.

(Filed February 15, 1906.)

1. CONSTITUTIONAL LAW—Game and Fish Statutes Construed. A statute of the Territory of Oklahoma, which provides that any agent, servant, or employee of any railroad or express company or common carrier, or private individual, who shall have or receive for transportation or carriage any deer, buck, doe, fawn, antelope, prairie chicken, grouse, quail, wild turkey, dove, or insectiverous bird, shall be deemed guilty of a misdemeanor, and upon conviction therefor, shall be fined in nay sum not less than one hundred, nor more than five hundred dollars and all costs incurred therein, and one half of said fine shall go to the informer of said violation of said law, and there shall be taxed as costs in said cause a fee of fifty dollars, to go to the county attorney prosecuting the same, is a valid law, and not in conflict with the organic act of the territory or of any United States law, or any act of congress of the United States.

2. APPEAL—Errors—Waived, When. Where errors are assigned in the petition in error, but are not mentioned in the argument or brief of counsel, and are not relied upon in the argument or brief for a reversal of the judgment complained of, they are deemed waived and abandoned, and will not be regarded by the supreme court.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before James K. Beauchamp, Trial Judge.*

*Moore & Moore*, for plaintiff in error.

*P. C. Simons, Attorney General*, and *Daniel Huett, County Attorney,* for defendant in error.

### STATEMENT OF FACTS.

The plaintiff in error, Oliver F. Cameron, defendant below, was arrested on a warrant from the probate court of Garfield county, sworn out by one James Kershaw, sheriff of said county. The information charges that said Cameron did, in said county, on the 18th day of December, 1904, unlawfully and wilfully have and receive for transportation and carriage, certain wild game, to wit: Quail and other insect-iverous birds, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the Territory of Oklahoma. The information was signed by the deputy county attorney, and the same was verified on information and belief. A warrant was issued thereon, and on December 23, 1904, the defendant was arrested under said warrant, and brought before the court, and gave bond for his appearance the following day, and on said day appeared and filed a demurrer to the complaint on the ground that said complaint did not state facts sufficient to constitute a public offense, for the reason that the statute of the Territory, on which this charge is based, is an attempt by the territorial legislature to prohibit and regulate interstate commerce, and is therefore unconstitutional and void under the constitution of the United States, which demurrer was overruled, and exceptions saved. On the 27th of December, the defendant appeared and filed a motion to quash the warrant because the

complaint is not verified as the law directs, which motion was by the court overruled, to which the defendant excepted. On the same day the defendant appeared in open court and entered a plea of not guilty, and on December 28th, the case was reached for trial before a jury. A trial was had which resulted in a verdict of guilty, whereupon the court assessed the fine at one hundred dollars and costs, and an appeal was taken to the district court. On the 14th day of April, 1905, in the district court, the defendant appeared and filed his demurrer to said complaint, and stated as reasons for said demurrer that the same did not state facts sufficient to constitute a public offense, and on the next day, filed an additional demurrer on the grounds that the statute under which the action was brought was in violation of the constitution and laws of the United States, on the subject of commerce, and because the information is not confined to birds killed in the Territory of Oklahoma; and on the same day, the district court overruled both of said demurrers, to which the defendant excepted, and on the 15th day of April, the cause came regularly on for trial in the district court. A jury was chosen, selected, empaneled, and sworn to try the case. Evidence was heard. The jury having heard the evidence, and being instructed by the court, after argument of counsel, retired, and afterwards returned into court, a verdict of guilty. Defendant filed a motion for a new trial. which was overruled by the court to which the defendant excepted. Defendant then filed a motion in arrest of judgment, which was overruled by the court, to which the defendant excepted. Thereupon the court imposed sentence on the defendant, and rendered judgment that he be fined the sum of one hundred dollars, and stand committed to the jail of Garfield county until

the fine and costs be paid, or until he be otherwise legally discharged, to which the defendant then and there excepted, now excepts, and brings the case here for review.

Opinion of the court by

IRWIN, J.: Several reasons are assigned in the assignments of error, and in their petition in error for a reversal of this case, among which is that the verification of the complaint was on information and belief, and for this reason is not sufficient. But a reference to the record will show that after the issuing of the warrant, and the service thereof upon the defendant, in the court below, he appeared in that court and gave bond for his appearance, and on the day of his appearance for which he had given bond, he entered a demurrer to the information on the ground that the statute on which the information is based, was unconstitutional, as being in violation of the interstate commerce law. Then, after the overruling of this demurrer, he, for the first time made a motion to quash the warrant. This court held in the case *In re Cummings,* 11 Okla. 286, that:

"A verification of a criminal complaint on information and belief is sufficient for every purpose, except merely the issuing of the warrant for the arrest of the defendant, and the objection to the verification must be made by motion to quash the warrant before plea to the merits, or other steps taken which will operate as a waiver of the defect in the verification."

And further on, in the same opinion, the court says: "By pleading not guilty to the charge contained in the complaint, consenting to a continuance, and agreeing to appear for trial at a future day, the petitioner waived any defect in the verification, and his motion to quash the warrant came too late."

This assignment .of error cannot be considered by this court for another reason. This court held, in the case of *Gardenhire v. Gardenhire,* 2 Okla. 484, that:

"Where errors are assigned in the petition in error, but are not mentioned in the argument or brief of counsel and are not relied upon in the argument or brief for the reversal of the judgment complained of, they will be deemed waived and abandoned and will not be regarded by the supreme court."

And, in the later case of *Provins v. Lovi,* 6 Okla. 94, this court said:

"Where an error is assigned and not presented and argued in the brief of counsel for appellant, and no authorities are cited in support of the contention and counsel for appellee treat the question as abandoned, this court will not review the same."

Now an examination of the brief and argument filed by counsel for plaintiff in error will show that the only reference to this assignment of error therein, is a citation from the record contained in the statement of facts. But when counsel reach that part of their brief which is denominated "brief and argument," not one word is said about this assignment of error, and no authorities are cited in support thereof. Hence under the well established rules of this court, this assignment of error will be treated as abandoned. The only assignment of error argued or relied on by counsel for plaintiff in error for a reversal of this case is that the statute under which this action was brought, is unconstitutional and void, as being in violation of the interstate commerce laws of the United States. The section of the statute under which this is brought is section 3, chapter 15, of the session laws of Oklahoma for 1903, which is as follows:

"Any agent, servant, or employe of any railroad or express company, or common carrier, or private individual who shall have or receive for transportation or carriage any of the birds or animals mentioned in section one of this act, shall be deemed guilty of a misdemeanor, and upon conviction therefor, shall be fined in any sum not less than one hundred, nor more than five hundred dollars, and all costs incurred therein, and one-half of said fine shall go to the informer of said violation of said law, and there shall be taxed as costs in said cause, a fee of fifty dollars to go to the county attorney prosecuting the same."

The birds and animals described in section one, and referred to in section three, are deer, buck, doe, fawn, antelope, grouse, quail, wild turkey, dove, or other insectiverous birds.

The first contention of counsel for plaintiff in error is, that as this section, and the offense therein described, is not confined to such animals or birds as are killed in this Territory, and it is contended that a state or territory does not have the right to legislate in relation to game in other states, that the statute is therefore void. And it is contended that the wild game within a state belongs to the people in their collective sovereign capacity. Game is not the subject of private ownership, except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or traffic or commerce in it, but the power of the legislature in this regard only applies to game within the state, and no such power to interfere with the private affairs of individuals can affect the right of the citizen to sell or dispose of, as he pleases, game which has become a subject of private ownership by a lawful purchase in another state.

But in making this argument, and contending for this principle, counsel for plaintiff in error have overlooked a very

important piece of legislation on the part of the congress of the United States. It is a well understood, often repeated, and well recognized rule, that in a territory the congress of the United States have the power to legislate for the people on all subjects whatsoever. Volume 31, Statutes at Large of the United States, pages 187-189, contains what is known as the "Lacey Law" entitled, "An Act to enlarge the Powers of the Department of Agriculture, Prohibit the Transportation by Interstate Commerce of Game killed in violation of the Local Laws, and for other purposes." Section 5 of this act is as follows:

*"Imported Species Subject To Local Laws:* Sec. 5. That all dead bodies, or parts thereof, of any foreign game animals, or game or song birds, the importation of which is prohibited, or the dead bodies, or parts thereof, of any wild game, animals, or game or song birds transported into any state or territory, or remaining therein for use, consumption, sale, or storage therein, shall upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such animals or birds had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise. This act shall not prevent the importation, transportation, or sale of birds or bird plumage manufactured from the feathers of barnyard fowl."

This act was aproved May 25, 1900, and consequently was in full force and effect at the time of the enacting of the statute by the territorial legislature of Oklahoma, upon which this information and warrant was based. This act of congress, it seems to us, completely answers the contention of counsel for plaintiff in error.

Having examined the entire record, and finding no error therein, the decision of the district court is affirmed, at the costs of the plaintiff in error.

Beauchamp, J., who presided in the court below, not sit· ting; all the other Justices concurring.