UNITED STATES v. SIX HUNDRED AND FIFTY CASES OF TOMATO CATSUP.

(District Court, D. Rhode Island. January 21, 1909.)

No. 1,127.

**1. Food (§ 24\*)—Pure Food Law—Condemnation—"Offal."**
    A libel for condemnation of catsup, alleging that it was misbranded, in that it was made in part from tomato pulp screened from peelings and cores, as the "offal" of tomato canning factories, and not from choice ripe tomatoes, etc., as stated in the labels, did not charge a violation of the provision of the pure food law (Act Cong. June 30, 1906, c. 3915, § 7, par. 6, 34 Stat. 768 [U. S. Comp. St. Supp. 1907, p. 932]) relating to preparations consisting in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance; the words "as the offal of tomato canning factories" being of no exact signification, and the word "offal" not the equivalent of a charge that the tomato pulp was a filthy, decomposed, or putrid vegetable substance.
    [Ed. Note.—For other cases, see Food, Dec. Dig. § 24.\*
    For other definitions, see Words and Phrases, vol. 6, p. 4915.]

**2. Food (§ 24\*)—Pure Food Law—Misbranding—Libel.**
    Where a libel to condemn food for violation of the pure food law alleges misbranding, prohibited by Act Cong. June 30, 1906, c. 3915, § 7, 34 Stat. 768 (U. S. Comp. St. Supp. 1907, p. 930), it is essential that the libel should set forth the branding and facts inconsistent therewith, and, if there is indefiniteness in the statement, it must be removed by proof.
    [Ed. Note.—For other cases, see Food, Dec. Dig. § 24.\*]

**3. Food (§ 24\*)—Condemnation—Label.**
    Where a libel for misbranding catsup alleged that the label stated the catsup was made from choice ripe tomatoes, etc., when in fact it was made in part from tomato pulp screened from peelings and cores as the offal of tomato canning factories, and not from choice ripe tomatoes, etc.,

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it would not be assumed, from the fact that the peelings and cores were not used in a tomato canning factory, that they were not suitable for making tomato catsup.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

4. EVIDENCE (§ 20*)—JUDICIAL NOTICE—FOOD PROCESSES.

Judicial notice may be taken of the fact that screening or sifting is one of the processes of catsup making.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 20.*]

5. FOOD (§ 24*)—CONDEMNATION—PURE FOOD LAW—BURDEN OF PROOF.

The pure food law (Act Cong. June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1907, p. 928]) provides that proceedings for condemnation shall conform to proceedings in admiralty. Admiralty rule 29 declares that, on the taking of a libel pro confesso, the court shall proceed to hear the cause ex parte and adjudge as to law and justice shall appertain. *Held*, that where a libel against catsup charged misbranding, in that it recited that the catsup was made form choice ripe tomatoes, when in fact it was made in part from tomato pulp screened from peelings and cores as the offal of tomato canning factories, the libel being confessed, the burden was on the government to prove that the label contained' a statement which was substantially false and misleading.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

Charles A. Wilson, U. S. Atty.

William B. Greenough, for claimant.

BROWN, District Judge. This libel prays condemnation of 650 cases of tomato catsup, under Act Cong. June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1907, p. 928), known as the "Pure Food Law." The charge is of misbranding.

The only material part of the label is the following:

"Made from choice ripe tomatoes, granulated sugar, selected high grade spices, grain vinegar."

The libel alleges that the articles are misbranded—

"for the reason that said catsup is made in part from tomato pulp screened from peelings and cores, as the offal of tomato canning factories, and not from choice ripe tomatoes, granulated sugar, and selected high grade spices. grain vinegar, as stated in said labels."

It is not charged that there is a violation of section 7, par. 6, which relates to preparations—

"consisting in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance," etc.

The sole allegation is that the label is in the above particulars misleading and false.

The words "as the offal of tomato canning factories" are not of exact signification. They do not charge a violation of section 7, par. 6. The indefinite suggestion of the word "offal" cannot be considered as the equivalent of a charge that the tomato pulp was a filthy, decomposed, or putrid vegetable substance. The inconsistency, if there be any, must be between the statement that the catsup is "made from choice ripe tomatoes" and the fact that it is "made in part from tomato pulp, screened from peelings and cores."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The act in question imposes criminal penalties and the forfeiture of the offending article. Where the charge is of misbranding, it is essential that the libel should set forth the branding and facts inconsistent therewith. If there is indefiniteness in the statement, this indefiniteness must be removed by proof.

The mere fact that certain portions of the tomato are not used in a tomato canning factory does not establish the fact that they are not suitable for the making of tomato catsup. In order to decide that the libel states on its face a case of misbranding, the court would be required to rule that tomato pulp, screened from peelings and cores, is not made from choice ripe tomatoes.

Among the processes of catsup making which may be considered to be within judicial notice is the process of screening or sifting. The tomato is usually reduced to pulp, and that pulp made from peelings and cores is substantially different from the pulp of choice ripe tomatoes, in catsup making, cannot be inferred from a mere interpretation of the language of the libel. It is especially necessary, in administering an act like the pure food law (however beneficial it may be), that there should be reasonable definiteness and accuracy, not only in the statement of offenses against the act, but in conceptions of what is within the intent of Congress and what is not within that intent. In the administration of such an act it is particularly essential that it should not be given forced or strained constructions.

Though the claimant has not answered or contested the allegations of the libel, so that it may be taken pro confesso, yet it is the duty of the court, before entering a decree of condemnation in spite of such confession by default, to see that a case is made out.

The pure food act provides that proceedings for condemnation shall conform as near as may be to the proceedings in admiralty. By the twenty-ninth admiralty rule, upon the taking of a libel pro confesso, "the court shall proceed to hear the cause ex parte and adjudge therein as to law and justice shall appertain." The rule stated in Thomson v. Wooster, 114 U. S. 104–111, 5 Sup. Ct. 788, 792, 29 L. Ed. 105, seems applicable to this proceeding:

"The bill, when confessed by the default of the defendant, is taken to be true in all matters alleged with sufficient certainty; but in respect to matters not alleged with due certainty, or subjects which from their nature and the course of the court require an examination of details, the obligation to furnish proofs rests on the complainant."

Ohio Central Railroad Co. v. Central Trust Co., 133 U. S. 83–90, 10 Sup. Ct. 235, 237, 33 L. Ed. 561, also contains language appropriate to proceedings upon default in condemnation proceedings:

"A decree pro confesso is not a decree as of course according to the prayer of the bill, nor merely such as the complainant chooses to take it; but it is made (or should be made) by the court, according to what is proper to be decreed upon the statements of the bill assumed to be true. If the allegations are distinct and positive, they may be taken as true without proof; but if they are indefinite, or the demand of the complainant is in its nature uncertain, the requisite certainty must be afforded by proof."

The counsel for the claimant protests that nothing putrid or unwholesome is contained in the catsup. He states that defendant's posi-

tion is substantially that of one pleading nolo contendere, and that it prefers to throw up all claim to the goods rather than to contest the matter further. This, however, amounts to nothing more than a concession that what is alleged in the libel is true, with a protest against any objectionable significance in the word "offal."

I consider it to be the duty of the court, before condemning property, to see that there is a proper basis for such condemnation; and this duty is not changed by the concession of the defendant that it would rather its property should be condemned than that it should be put to the expense of contesting the matter with the government.

I am of the opinion that it is incumbent upon the United States to produce evidence to support the allegation that these goods are misbranded, in that the label contains a substantially false and misleading statement.

Where, upon the facts alleged, there can be no doubt of the substantial and necessary inconsistency between the statements of the label and the actual facts, the court may proceed at once to enter a decree of condemnation upon the defendant's concession by default of the facts alleged, without requiring of the government further proof. The present case, however, is not of that class, but requires further examination of details to determine whether the charge of misbranding is true.

The case may stand for ex parte hearing of proof in support of the libel.