## HOPKINS v. McCLURE.
### No. 3060.

Circuit Court of Appeals, Tenth Circuit.
March 10, 1945.

George Bingaman, of Purcell, Okl., for appellant.

Ram Morrison, of Oklahoma City, Okl., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This appeal challenges the judgment of the United States District Court for the Eastern District of Oklahoma, which ordered payment of an alimony judgment out of funds realized from condemnation proceedings, and held in the registry of the court for distribution to the owners of the land taken.

On September 26, 1942, the United States Government, acting by and through its Special Attorney Curtis P. Harris, and under authority of the Second War Powers Act, 1942, 56 Stat. 177, 50 U.S.C.A.Appendix, § 632, filed condemnation proceedings against a tract of land in Cleveland County, Oklahoma, allegedly owned by Ruth Idell Hopkins, appellant here, her father E. E. Hopkins (also known as Ernest E. Hopkins), J. W. Hopkins and H. C. Freeney. Pursuant to notice to all interested parties, the trial court on December 15, 1942, tried the title to the tract of land and adjudged "a life estate to Ruth Idell Hopkins, subject to the occupancy rights of Ernest E. Hopkins, remainder in Ernest E. Hopkins or his heirs," and on the same date appellant appearing by and through her attorney of record, filed a demand for jury trial on the fair cash market value of the lands taken by the Government. On the trial of the case the jury fixed the value of the land "belonging to E. E. Hopkins and Ruth Idell Hopkins" at $2,800, and on the same date the court entered judgment on the verdict reciting that the fair, cash market value of the land owned by "Ruth Idell Hopkins, in full fee simple title" was $2,800.'

On October 15, 1943, Clay McClure (formerly Mrs. E. E. Hopkins, and appellee here), with permission of the court, filed a petition in intervention in the condemnation proceedings alleging that on August 12, 1943, she had been granted a divorce from E. E. Hopkins in the District Court of Oklahoma County, and a judgment of $1,872.50, as alimony and attorney's fee. The petition sought to enforce a first and prior lien against the interest of E. E. Hopkins in the fund held by the Court Clerk under the condemnation judgment, on the grounds that the alimony judgment by its terms granted her a first and prior lien against the property of E. E. Hopkins. It was specifically alleged that E. E. Hopkins owned an interest in the real estate involved in the condemnation proceedings, having a value in excess of $2,000, and that he was entitled to receive as just compensation for his interest in the land taken, a sum of money in excess of $2,000.

When the matter came on for hearing on October 25, 1943, neither Ruth Idell Hopkins nor her father, E. E. Hopkins, appeared and the court found that they had been notified of the hearing, and adjudged them in default. Judgment was entered decreeing that E. E. Hopkins owned an "estate" in the land involved and that the alimony judgment was a first and prior lien against that interest, as represented by the condemnation fund. Accordingly, it ordered the Clerk to satisfy the judgment lien out of the $2,800 fund by issuing his voucher to Clay McClure in the sum of $1,872.50.

On the following November 27, appellant, Ruth Idell Hopkins, moved to vacate the order allowing the petition in intervention and to strike the same, on the grounds that neither she nor her attorney had notice of the motion for leave to intervene, nor was either of them served or furnished with a copy of the said petition; that the leave to intervene was granted upon an ex parte hearing without notice to, or knowledge of, appellant or her attorney of record, and that the petition should be stricken on the further grounds that upon its face Clay McClure could not have any lien or claim against the condemnation fund. On the same date the appellant moved to vacate the default judgment, alleging that "by the fraud of Clay McClure and her attorney, Curtis P. Harris" she did not receive notice of the hearing and was thereby prevented from appearing on October 25, 1943, when the default judgment was entered. She alleged that the land condemned by the Government, and represented by the condemnation fund, was a part of the homestead allotment, owned and occupied by her mother, a member of the Choctaw-Chickasaw Tribe of Indians, until shortly prior to her death in 1939, when she deeded the said land to her husband E. E. Hopkins in trust for appellant as a gift from the mother to her minor daughter. That she was at the time of the institution of the condemnation proceedings, and has ever since been, the owner of the fee simple title to the land condemned, and as such entitled to the just compensation for its taking. That E. E. Hopkins had never at any time during the pendency of the proceedings claimed or asserted any right, title or interest in or to the property or to the condemnation fund, and had no interest therein against which a judgment lien could attach.

After a full hearing conducted on January 17, 1944, and in pursuance of a memorandum opinion filed the following May 20, the trial court on June 5, 1944, by formal order, denied the motion to vacate and this appeal is from that order and not the default judgment.

■ On appeal, appellant challenges: (1) the validity of the court's order of October 15, 1943, allowing the appellee to intervene in the condemnation proceedings; (2) the validity of the order of December 15, 1942, fixing title to the lands taken, contending that the judgment of September 21, 1943, on the jury verdict was conclusive of that issue; (3) the payment of $1,872.50, out of funds on deposit in the registry of the court to Clay McClure, as void for the reason that the court did not ascertain the value of the estate if any, owned by E. E. Hopkins in the land condemned, as represented by the $2,800 in the registry of the court;[1] and (4) the default judgment of October 25, 1943, as void on the grounds that it was obtained by fraud of the intervenor and her attorney.

■ All of the points relied upon and complained of directly attack the validity of the default judgment of October 25, 1943. An aggrieved party may prosecute a timely appeal from a default judgment, but the distinct and positive averments in the complaint, upon which the judgment is rendered, are conclusively binding upon the appellant, and insofar as the judgment conforms to the complaint, it is unassailable on appeal. Thomson v. Wooster, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105; Ohio Central Railroad Company v. Central Trust Co., 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561; City of Winter Haven Florida v. Gillespie, 5 Cir., 84 F.2d 285; Freeman on Judgments, Section 1298, p. 693.

■ But as we have seen, this appeal is not from the default judgment and ordinarily an order denying a motion to vacate a default judgment is not a final and appealable order within the meaning of 128(a) of the Judicial Code, 28 U.S.C.A. § 225(a). Taylor v. United States, 10 Cir., 145 F.2d 641; State Tax Commission of Utah v. United States, 10 Cir., 136 F.2d 903; Crutcher v. Joyce, 10 Cir., 134 F.2d 909; Glinski v. United States, 7 Cir., 93 F.2d 418. However, where as here the motion to vacate attacks the judgment for lack of service on the movant or for fraud in its procurement, it may be treated as an independent action, a judgment on which is final, hence appealable. Taylor v. United States, supra; Stevirmac Oil & Gas Company v. Ditman, 245 U.S. 210, 38 S.Ct. 116, 62 L.Ed. 248; State Tax Commission of Utah v. United States, supra; Jackson v.

---

[1] The motion to vacate the judgment did not complain of the trial court's failure to separately value the interest of E. E. Hopkins in the land or fund, but it did specifically deny that Hopkins had any interest whatsoever in the condemned land and we think that averment is sufficiently broad to reach the point on appeal from the order denying the motion to vacate.

Heiser, 9 Cir., 111 F.2d 310; Glinski v. United States, supra. In cases where the appeal is from the order denying the motion to vacate, the scope of the appeal is, of course, confined to the points complained of in the motion and to the order of the court from which the appeal is taken. In other words, the appellant may not complain on appeal of that which she did not complain in the motion to vacate.

However, the motion to vacate the order allowing the intervention and to strike the petition in intervention was filed simultaneously with the motion to vacate the default judgment. The trial court apparently considered the two pleadings together in disposing of the motion to vacate and we shall do likewise for the purposes of this appeal.

■ The declaration of taking; the deposit of the estimated just compensation in the registry of the court; the fixing of title (Second War Powers Act, 1942, 56 Stat. 177, 50 U.S.C.A.Appendix, § 632, and 40 U.S.C.A. § 258a); the determination of just compensation in accordance with state procedure (66 O.S.A. §§ 53 to 60 inclusive) as directed by Federal law (36 Stat. 1167, 40 U.S.C.A. § 258), and the ultimate distribution of the just compensation to those determined to be legally entitled thereto is one continuous integrated process of litigation. See Catlin v. United States, 65 S. Ct. 631; United States v. 17,280 Acres of Land, etc., D.C., 47 F.Supp. 267. And the allowance of an intervention by one who claims an interest in the condemnation fund or who will be adversely affected by its distribution is only one of the steps in the attainment of the ultimate objective of the litigation. Cf. United States v. 1,830.62 Acres of Land, etc., D.C., 51 F.Supp. 158. The petition in intervention claimed a lien against the undistributed condemnation fund in the registry of the court and the court was specifically authorized to make "just and equitable" orders in respect to asserted liens and other charges. 40 U.S. C.A. § 258a. It follows that the court had jurisdiction of the subject matter and of the parties and was authorized to decide the issues raised in the petition in intervention. Whether, therefore, the allowance of the petition in intervention is governed by state or by Federal procedural requirements, the action of the court thereon was not erroneous. Shores v. Hendy Realization, 9 Cir., 133 F.2d 738; Miami County Nat. Bank of Paola, Kansas v. Ban-

croft, 10 Cir., 121 F.2d 921; Simms v. Andrews, 10 Cir., 118 F.2d 803; Morton v. Baker, 183 Okl. 406, 82 P.2d 998. Cf. Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 665, 61 S.Ct. 666, 85 L. Ed. 975.

■ In denying the motion to vacate, the trial court specifically found that the attorney for the intervenor mailed a copy of the intervening petition to the attorney for the appellant and discussed the matter with him personally, and that due notice of the hearing on the petition in intervention was also given to the attorney of record. This finding is based upon sharply conflicting evidence, and it is conclusively binding here. Moreover, the appellant has not challenged it on appeal. It follows for the purpose of this appeal that the appellant did have Notice of the hearing on the petition in intervention, pursuant to which the default judgment was entered, and that she was not precluded from appearing through the fraud of the intervenor or her attorney. In its memorandum opinion the court further considered and decided the question whether the alimony judgment constituted a valid lien against the interest of E. E. Hopkins in the condemnation fund, and based upon Oklahoma law (Gardenhire v. Gardenhire, 2 Okl. 484, 37 P. 813), held that the said judgment did constitute a lien against all of Hopkins' property, including his interest in the condemnation fund.

■ The contention in the motion to vacate, and on appeal, to the effect that Hopkins had no interest in the land, hence no interest in the condemnation fund, and that in any event the trial court was powerless to satisfy a judgment out of the joint funds without first judicially ascertaining the value of the interest of the judgment creditor therein, is met by the distinct and positive allegations in the petition of intervention to the effect that Hopkins owned an interest in the land having a value in excess of $2,000. Had the appeal been prosecuted from the default judgment these untraversed allegations would be conclusively binding upon appeal here and they would support the judgment of the court. Thomson v. Wooster, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105; Ohio Central R. Co. v. Central Trust Co., 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561; City of Winter Haven, Florida v. Gillespie, 5 Cir., 84 F.2d 285; Freeman on Judgments, Sec. 1298, p. 693. We think they are for the same reason

equally binding and unassailable, when as here, the appeal is from an order denying the motion to vacate the otherwise invulnerable default judgment.

We therefore conclude that the judgment must stand.

HUXMAN, Circuit Judge (concurring specially).

I concur on the sole ground that the only thing that was brought up by the notice of appeal was the correctness of the ruling of the court on the motion to vacate the default judgment. The correctness of the default judgment was not appealed from. Whether the default judgment should be set aside was a matter for the trial court. It exercised its discretion, and from the record it clearly appears that there was no abuse of that discretion. Its ruling on the motion to set aside the judgment is therefore correct and must be affirmed. The correctness of the default judgment is not involved in this appeal.