12-4521-cv
*Greathouse v. JHS Security Inc.*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

————

August Term, 2012

(Argued: June 10, 2013     Decided: April 20, 2015)

Docket No. 12-4521-cv

————

DARNELL GREATHOUSE,

*Plaintiff-Appellant*,

-v.-

JHS SECURITY INC., MELVIN WILCOX,

*Defendants-Appellees*.

————

B e f o r e :

POOLER and CARNEY, *Circuit Judges*, and KORMAN, *District Judge*.[*]

Appeal from a final judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*), adopting the Report and Recommendation of a Magistrate Judge (Gorenstein, *M.J.*), and declining to award damages, following entry of default, to Plaintiff-Appellant Darnell Greathouse on his retaliation claim brought under the Fair Labor Standards Act

---

[*] The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

("FLSA"), 29 U.S.C. §§ 215(a)(3), 216. Greathouse alleged that his employer retaliated against him in violation of section 215(a)(3) when he orally complained to his employer that he had not received the pay he was due. The District Court's ruling against Greathouse turned on our decision in Lambert v. Genesee Hospital, 10 F.3d 46 (2d Cir. 1993), which held that making an informal oral complaint to a supervisor did not amount to "fil[ing a] complaint" and therefore was not protected by the statute. We now conclude that the Supreme Court's decision in Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011), which held that an oral complaint can serve as a predicate to an FLSA retaliation claim, casts doubt on the continued validity of our ruling in Lambert. Accordingly, we overrule Lambert insofar as Kasten has not already done so. We VACATE the judgment of the District Court, and REMAND the cause for further proceedings consistent herewith.

VACATED AND REMANDED.

Judge KORMAN concurs in part and dissents in part in a separate opinion.

———————

PENN U. DODSON, AndersonDodson, P.C., New York, New York, *for Plaintiff-Appellant*.

ALEXANDER BOGDAN (Vilia B. Hayes, *on the brief*), Hughes Hubbard & Reed LLP, New York, New York, *amicus curiae counsel appointed by the Court in support of Defendants-Appellees*.

PAUL L. EDENFIELD, Attorney (M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, *on the brief*), U.S. Department of Labor, Office of the Solicitor, Washington, D.C., *for amicus curiae* Acting Secretary of Labor *in support of Plaintiff-Appellant*.

TSEDEYE GEBRESELASSIE (Catherine K. Ruckelshaus, *on the brief*), National Employment Law Project, New York, New York, *for amici curiae* Make the Road New York, Brandworkers International, Restaurant Opportunities Center of New York, National Employment Law Project, Legal Aid Society, Asian American Legal Defense and Education Fund, and Urban Justice Center *in support of Plaintiff-Appellant*.

———————

SUSAN L. CARNEY, *Circuit Judge*:

In this appeal, we consider the effect of the Supreme Court's decision in Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011), on our 1993 decision in Lambert v. Genesee Hospital, 10 F.3d 46 (2d Cir. 1993), concerning what constitutes "fil[ing a] complaint" under the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

Section 215(a)(3) makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . related to" FLSA's provisions. In Lambert, we read section 215(a)(3) to require that an employee pursuing a claim for unlawful retaliation have done more than voice an equal pay complaint to a supervisor. 10 F.3d at 55-56. To serve as a predicate for an FLSA retaliation claim, we held, a complaint

3

must be "formal[ly]" filed, see id. – a condition that we have subsequently interpreted to require (1) a written complaint, that is (2) filed with a government agency.[1]

In its 2011 decision in Kasten, however, the Supreme Court held that the section's pivotal phrase – "filed any complaint" – encompasses oral as well as written complaints, so long as the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." 131 S. Ct. at 1335. To the extent, then, that Lambert turned on the oral nature of the complaint made by the employee, Kasten rejected Lambert's analysis. The Kasten Court refrained, however, from addressing the second factor on which the Lambert analysis hinged: that the complaint must be directed to a government agency, not merely to a supervisor in the ranks of the defendant employer. Kasten, 131 S. Ct. at 1336. Although Kasten itself arose in the context

---

[1] See, e.g., Nicolaou v. Horizon Media, Inc., 402 F.3d 325, 328 (2d Cir. 2005) (explaining that in Lambert, "this Court held that Section [2]15(a)(3) . . . does not apply to retaliation taken in response to internal complaints, as opposed to retaliation occurring after an employee has cooperated with an investigation brought by a regulatory agency"); see also Parilla v. Salt & Pepper on 33rd St. Inc., No. 12 Civ. 6382 (AKH), 2013 WL 4536628, at *3 (S.D.N.Y. Apr. 8, 2013) ("In [Lambert], the Second Circuit found that two requirements had to be met in order for [section 215(a)(3)] to apply: 1) the complaint must have been a formal, written complaint; and 2) the complaint must have been made to a government agency, not to an employee's supervisor.").

4

of an oral complaint made to an employer, not a government agency, the <u>Kasten</u> Court declined to address specifically whether retaliation for a complaint made to an employer is actionable. <u>See</u> <u>id.</u> at 1336.

<u>Kasten</u> overrules <u>Lambert</u>'s requirement that an employee seeking section 215(a)(3)'s protections file a written complaint. As we discuss below, <u>Kasten</u> also casts doubt on <u>Lambert</u>'s second requirement: that, for an employee's complaint to fall within the protections of section 215(a)(3), it be made to a government agency. Indeed, we not long ago characterized <u>Kasten</u> (albeit in a footnote) as effecting an "abrogation of our precedent in this area." <u>Kuebel v. Black & Decker Inc.</u>, 643 F.3d 352, 358 n.3 (2d Cir. 2011). <u>Lambert</u>'s holding in this respect is at odds, moreover, with the weight of authority in our sister circuits, and with the consistently held position of the two authorities charged with section 215(a)(3)'s enforcement: the Secretary of Labor and the Equal Employment Opportunity Commission ("EEOC").

Therefore, today, we overrule <u>Lambert</u> to the extent it holds that section 215(a)(3) requires an employee to have filed a complaint with a government agency as a predicate for an FLSA retaliation claim.[2] We conclude that an

---

[2] The panel's opinions have been circulated to all active members of this Court prior to filing. <u>See</u>

employee may premise a section 215(a)(3) retaliation action on an oral complaint made to an employer, so long as – pursuant to <u>Kasten</u> – the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." 131 S. Ct. at 1335. Accordingly, because the District Court denied Greathouse damages on his claim for retaliatory discharge based entirely on <u>Lambert</u>'s rule, we vacate the judgment insofar as it relied on <u>Lambert</u> and remand the cause for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

We recite the facts as found by the Magistrate Judge in a report and recommendation that was adopted by the District Court. <u>See</u> <u>Greathouse v. JHS Sec., Inc.</u>, No. 11 Civ. 7845 (PAE) (GWG), 2012 WL 3871523 (S.D.N.Y. Sept. 7, 2012), *adopted by* 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012). Because both defendants defaulted, the Magistrate Judge properly accepted as true the well-pleaded factual allegations of Greathouse's complaint regarding liability, and

---

<u>Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58, 67 & n.9 (2d Cir. 2009).

provided for further proceedings to determine the appropriate damage award.

See SEC v. Razmilovic, 738 F.3d 14, 19 (2d Cir. 2013).

From September 2006 through October 14, 2011, plaintiff Darnell Greathouse worked as a security guard for defendant JHS Security Inc. ("JHS"). Greathouse considered defendant Melvin Wilcox, the president and part-owner of JHS, to be his "boss." Greathouse, 2012 WL 3871523, at *2. During the course of his employment with JHS, Greathouse was the victim of a number of improper employment practices, including non-payment and late payment of wages, and improper payroll deductions. Although Wilcox repeatedly told Greathouse that he would receive his outstanding paychecks, those checks never arrived.

On October 14, 2011, Greathouse complained to Wilcox that he had not been paid in several months. Wilcox responded, "I'll pay you when I feel like it," and, without warning, drew a gun and pointed it at Greathouse. Greathouse, 2012 WL 3871523, at *2. Greathouse understood that response as ending his employment with JHS.

About two weeks later, Greathouse filed his complaint in the United States

7

District Court for the Southern District of New York. In addition to various FLSA and New York Labor Law ("NYLL") claims related to his missing and improperly reduced wages,[3] he alleged that Wilcox and JHS (through Wilcox) had effectively discharged him in retaliation for his October 14th complaint, thereby violating section 215(a)(3) and the NYLL.

Several months later, after neither defendant appeared or filed an answer, the clerk of court entered defaults against both. The District Court then referred the matter to a magistrate judge to evaluate Greathouse's claims for damages. The Magistrate Judge issued a Report and Recommendation in September 2012, recommending that the District Court enter a damages award in the total amount of $30,658.50, plus prejudgment interest, for Greathouse's claims for unpaid overtime, unpaid wages, improper deductions, and liquidated damages under the NYLL. Greathouse, 2012 WL 3871523, at *12.

As to the retaliation claim, however, the Magistrate Judge concluded that Lambert barred an award because Greathouse had not filed a complaint with any government agency or other prosecutorial authority, but had merely confronted

---

[3] Section 216, "Penalties," provides that an employee may sue an employer to recover legal or equitable relief, including the payment of lost wages, "as may be appropriate to effectuate the purposes of section 215(a)(3) . . . ." 29 U.S.C. § 216(b). New York Labor Law does essentially the same. See N.Y. Lab. Law § 663 (McKinney 2011).

8

his employer in person to demand his missing wages. The Magistrate Judge recognized that, under the Supreme Court's holding in Kasten, an oral complaint may serve as a predicate for an FLSA retaliation claim. The Magistrate Judge correctly acknowledged, however, that Kasten did not overturn Lambert insofar as we held there that a complaint made *to a supervisor* is not a complaint "filed" under section 215(a)(3).

Greathouse filed objections to the Magistrate Judge's report in the District Court, contesting, *inter alia*, the Magistrate Judge's finding that Greathouse was not entitled to damages for his FLSA retaliation claim. The District Court rejected Greathouse's objection on this issue, agreeing with the Magistrate Judge about the continued import of Lambert. The District Court subsequently adopted the Magistrate Judge's conclusions, subject only to two minor exceptions not relevant here, and the District Court entered default judgment.[4]

On appeal, Greathouse argues primarily that, in light of Kasten, we should overrule what remains of Lambert and squarely hold that FLSA prohibits retaliation against employees who complain orally to their employers about

---

[4] These concerned the accounting for certain unlawful payroll deductions and unpaid wages, which marginally affected the amount of the District Court's award for liquidated damages under the NYLL. **[A.95-96, 98]**

9

perceived FLSA violations.  Because defendants defaulted in the District Court and never filed an appearance in this Court, we appointed *pro bono* counsel to argue, as *amicus curiae* in support of defendants, that the Supreme Court's decision in <u>Kasten</u> did not abrogate our holding in <u>Lambert</u> and that the <u>Lambert</u> rule with respect to intra-company complaints should survive.  The two administrative authorities charged with administering FLSA – the EEOC and the Secretary of Labor – filed *amicus* briefs in support of Greathouse's position.[5]

## **DISCUSSION**

Section 215(a)(3) forbids "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has *filed any complaint* or instituted or caused to be instituted any proceeding under or related to this chapter . . . ."  29 U.S.C. § 215(a)(3) (emphasis added).  As described above, the Supreme Court held in <u>Kasten</u> that FLSA's anti-retaliation provision "includes oral as well as written complaints."  131 S. Ct. at 1329.  The Court overruled <u>Lambert</u> and our precedent following <u>Lambert</u> to the extent that <u>Lambert</u> required an employee to have filed a written complaint to claim FLSA's

---

[5] Counsel for the Secretary also participated in oral argument.

10

protections. Id. at 1330 (citing Lambert as a contrary decision). But the Kasten Court expressly declined to address the question whether an employer's retaliation for an intra-company complaint is actionable under FLSA.[6] Id. at 1336.

It is difficult to ignore, however, that the complaint at issue in Kasten was lodged not with a government agency, but with an employer. See id. at 1340-41 (Scalia, *J.*, dissenting). Although slightly different concerns animated the Court's discussion in Kasten, an interpretation that excludes clearly stated complaints from protection because they were made to the employer instead of a government agency would run counter to the broadly remedial purpose that the Kasten Court instructed FLSA serves. See id. at 1334. So, although we recognize that the Court has not yet ruled on this precise question, we conclude that its ruling in Kasten must be read as casting serious doubt on the second component of our ruling in Lambert.

### A. Our Holding in *Lambert*

In Lambert, three female employees alleged that their employer, Genesee Hospital (the "Hospital"), retaliated against them in violation of the Equal Pay

---

[6] It explained that the issue was not before the Court, since the defendant employer had failed to mention the point in its opposition to the petition for certiorari. Id. at 1336.

Act of 1963 ("EPA"), 29 U.S.C. § 206(d), a statute that amended FLSA. 10 F.3d at 50. Two of the plaintiffs, Janine Lambert and Eva Baker, alleged that they complained to their departmental supervisor and to a member of the Hospital's employee-affairs department about Baker's salary, which in their view was unfairly lower than that of a male employee in the department (Francis Dupre), whose responsibilities were substantially equivalent to Baker's. Id. at 51.

About one year after Lambert and Baker complained, the supervisor selected Dupre to manage the department. Id. Citing that incident and others, Lambert, Baker, and one of their female colleagues sued the Hospital, their supervisor, and Dupre, alleging that Dupre's promotion over Baker was made in retaliation for Lambert and Baker's complaints to their supervisor about Baker's unequal pay. Id. This, they contended, violated the EPA and section 215(a)(3).[7]

The district court assumed that plaintiffs' allegations stated a retaliation claim under section 215(a)(3), Lambert, 10 F.3d at 56, and the case proceeded to trial, where a jury found for plaintiffs on their retaliation claim as well as on their equal pay claim, id. at 51-52. After trial, however, the district court granted

---

[7] The EPA amended FLSA and is codified under the same chapter. An employer's retaliation for filing EPA complaints, like retaliation for filing FLSA complaints, is analyzed under section 215(a)(3). See Lambert, 10 F.3d at 55.

defendants' motion for judgment notwithstanding the verdict. Id. at 52. Plaintiffs appealed the resulting dismissal.

On appeal, we held that the district court erred in granting judgment to defendants on plaintiffs' retaliation claim because defendants had waived their legal argument. Id. at 54. Nonetheless, we dismissed plaintiffs' section 215(a)(3) claim, on our own accord, for failure to state a claim. Id. at 56. We determined that the plain language of section 215(a)(3) – to "file[] any complaint" – "limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." Id. at 55. Because plaintiffs premised their claim on "simply oral complaints to a supervisor," they had not stated a claim for retaliation under section 215(a)(3). Id. at 55-56.

The Lambert court's conclusion – that an employee pursuing a claim for unlawful retaliation must do more than voice an equal pay complaint to a supervisor to invoke section 215(a)(3)'s protections – is contrary to the weight of authority in our sister circuits, even more so now than when Lambert was decided. Indeed, the First, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and

13

Eleventh Circuits have all held that section 215(a)(3) protects employees from retaliation for their complaints made to employers, and the Sixth Circuit has assumed, without significant discussion, that complaints to an employer are covered by section 215(a)(3). [8] The EEOC has long maintained the position that the Act protects employees who make such intra-company complaints.

## B. **The Supreme Court's Holding in** *Kasten*

Nearly two decades after Lambert was decided, after these developments in other circuits and application of Lambert within our own, the Supreme Court granted certiorari in Kasten to resolve a "conflict among the Circuits as to whether an oral complaint is protected" by section 215(a)(3). 131 S. Ct. at 1330. The question there arose from an employee's oral complaints to his shift

---

[8] See Minor v. Bostwick Labs., Inc., 669 F.3d 428, 432 (4th Cir. 2012) (holding that "remedial purpose of the statute requires that it protect from retaliation employees who file intracompany complaints"); Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834, 838 (7th Cir. 2009), overruled on other grounds, 131 S. Ct. 1325 (2011) (concluding internal complaints protected under plain language of § 215(a)(3)); Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 626 (5th Cir. 2008) (adopting "majority rule" that internal complaints are protected because "it better captures the anti-retaliation goals" of FLSA); Lambert v. Ackerley, 180 F.3d 997, 1005 (9th Cir. 1999) (en banc) (holding that section 215(a)(3) protections "extend[] to employees who complain to their employer"); Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 43 (1st Cir. 1999) (Campbell, *J.*) (concluding that "animating spirit of the [FLSA] is best served by a construction of § 215(a)(3) under which the filing of a relevant complaint with the employer no less than with a court or agency may give rise to a retaliation claim"); EEOC v. Romeo Cmty. Sch., 976 F.2d 985, 989-90 (6th Cir. 1992); EEOC v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir. 1989) (stating that unofficial complaints to an employer "constitute an assertion of rights protected under the statute"); Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984) (concluding that section 215(a)(3) applies to "the unofficial assertion of rights through complaints at work"); Brennan v. Maxey's Yamaha, Inc., 513 F.2d 179, 181 (8th Cir. 1975) (concluding that a complaint to company president "was an act protected from reprisals" under section 215(a)(3)).

14

supervisor and to other employees that their employer was violating FLSA by failing to compensate them for time spent donning and doffing their work-related protective gear.  Id. at 1329-30.  The Seventh Circuit had affirmed summary judgment for the employer, ruling that FLSA does not protect oral complaints.  Id. at 1330.

Deciding that the statutory phrase "filed any complaint," read in isolation, is "open to competing interpretations," id. at 1330-31, the Supreme Court looked to FLSA's basic objectives for interpretive guidance.  It also examined the range of meanings that the words "filed" and "complaint" and the phrase "filed any complaint" could bear and gave "a degree of weight" to the views of the agencies charged with enforcing FLSA – the Department of Labor and the EEOC, which argued for a broad reading of the section, one protective of employees.  Id. at 1335.

The Court concluded that "only one interpretation is permissible":  an oral complaint is protected by FLSA's anti-retaliation provision if the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute

15

and a call for their protection."  Id. at 1331, 1335.  Despite framing the inquiry by reference to what a "reasonable *employer*" would understand, id. at 1335 (emphasis added), the Court nevertheless expressly declined to address the logically prior question whether FLSA applies, in the first instance, to complaints made directly to employers, rather than to government agencies.  Id. at 1336.  It is to that question that we now turn.

### C.  Looking Anew at the Statutory Language: "Filed Any Complaint"

Both impelled and guided by Kasten, we now look anew at the statutory interpretation question that we addressed of our own accord in Lambert, but that the Kasten Court did not resolve:  does section 215(a)(3) prohibit retaliation against employees for oral complaints made to employers?

#### 1. The phrase "filed any complaint" admits of more than one meaning

A statute generally "should be enforced according to its plain and unambiguous meaning."  United States v. Livecchi, 711 F.3d 345, 351 (2d Cir. 2013).  The "plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson v. Shell Oil

16

Co., 519 U.S. 337, 341 (1997).  If we determine that a statutory provision is ambiguous, we then turn to canons of statutory construction for assistance in interpreting the statute.  See Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 423 (2d Cir. 2005).

In Lambert, we determined that the plain language of section 215(a)(3) prohibited only "retaliation for filing *formal* complaints, instituting a proceeding, or testifying."  Lambert, 10 F.3d at 55 (emphasis added).  But when we look again at section 215(a)(3), with the benefit of Kasten and the readings of our sister circuits, we now conclude that the statutory language is not as plain and unambiguous as it seemed when Lambert was decided.  See Kasten, 131 S. Ct. at 1330-31 (stating that section 215(a)(3) "may be open to competing interpretations").  As the Supreme Court explained, "even if the word 'filed,' considered alone, might suggest a narrow interpretation limited to writings, the phrase '*any* complaint' suggests a broad interpretation that would include an oral complaint."  Id. at 1332.

Guided by this discussion, we must reevaluate the distinction drawn in Lambert and its progeny between "formal" complaints to government agencies

17

and "informal" complaints to supervisors.  First, we observe that the text of the statute does not provide that a complaint must be filed "formally," or exclude from its protections those complaints that are filed "informally."  In short:  it does not use either word.  Nor does it expressly direct that, to be protected, a complaint must be filed with a government agency or any particular entity.[9]  Second, even if the word "filed," considered alone, might seem to contemplate lodging a complaint with a governmental body, the word's context counsels against a narrow reading:  as the Supreme Court reasoned, the phrase "*any complaint*" suggests an expansive reading, one that could include complaints filed with or expressed to an employer.

Citing Justice Scalia's dissent in <u>Kasten</u>, 131 S. Ct. at 1337 (Scalia, *J.*, dissenting), *amicus curiae* in support of defendants argues that the phrase "filed any complaint" clearly and unambiguously refers *only* to complaints made to government agencies, because every other use of the word "complaint" in FLSA refers to a governmental filing.  <u>See</u> 29 U.S.C. § 216(b) (explaining that the right

---

[9] In full, subsection 3 of section 215(a) provides that it is unlawful for any person:

> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

to bring certain actions "shall terminate upon the filing of a complaint by the Secretary of Labor"); id. § 216(c) (explaining that the statute of limitations for an action for unpaid wages commences "on the date when the complaint is filed"); id. § 218c(b) (setting forth the "Complaint procedure" by which one may "seek relief" by filing a complaint with the Department of Labor). *Amicus* also contends that the phrase "fil[ing a] complaint" is not commonly used to describe the act of complaining to an employer.

But, as our sister circuits have recognized, the phrase "filed any complaint" may also plausibly be interpreted to include intra-company complaints. The accepted definition of "to file," as the First Circuit has noted, may include an employee's submission of a written letter of complaint to an employer: the concept is "sufficiently elastic to encompass an internal complaint made to a private employer with the expectation the employer will place it on file among the employer's official records." Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 41-42 (1st Cir. 1999) (Campbell, *J.*).[10] And, filing work-related grievances

---

[10] We also agree with the Fourth Circuit that the phrase "filed any complaint" is "correctly considered separately from the remainder of § 215(a)(3)." Minor, 669 F.3d at 436. As noted above, FLSA's anti-retaliation provision protects an employee who has "filed any complaint *or* instituted or caused to be instituted any proceeding . . . *or* has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3) (emphasis added). As the Fourth Circuit concluded, by phrasing section 215(a)(3) in the disjunctive, "Congress has indicated its intent that we consider each of these categories of protected

19

with employers is a common practice in many workplaces.  See, e.g., Lambert v. Ackerley, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc) (noting that "any complaint" is clearly broad enough to encompass complaints made to employers, and highlighting the widespread practice of "filing" grievances and complaints with unions and employers before commencing other internal or external proceedings).  In addition, "filed any complaint" must be examined in context, contrasting it with the neighboring phrase, "instituted any proceeding":  to avoid rendering one or the other surplusage, we may construe the first to contemplate a communication (such as an intra-company complaint seeking a change in company practice) that does not ordinarily trigger a "proceeding" (such as an adjudicatory process).[11]

In light of these competing interpretations, we conclude that the statutory phrase "filed any complaint" is variable in meaning and does not unambiguously denote submission of complaints to government agencies alone. To interpret the language of the statute, then, we must apply traditional tools of

activity independently."  Minor, 669 F.3d at 436 (explaining that "'terms connected by a disjunctive [should] be given separate meanings'" (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979))).

[11] As noted above, see supra note 8, other circuits have drawn similar conclusions about the reach of the phrase "filed any complaint."  See Minor, 669 F.3d at 432; Kasten, 570 F.3d at 838; Hagan, 529 F.3d at 626; Lambert, 180 F.3d at 1005; Valerio, 173 F.3d at 43; White & Son Enters., 881 F.2d at 1011; Love, 738 F.2d at 387; Brennan, 513 F.2d at 181.

statutory interpretation. These include looking to the purpose of FLSA, and affording some degree of weight to the interpretations of the agencies charged with enforcing it. See Minor v. Bostwick Labs., Inc., 669 F.3d 428, 436 (4th Cir. 2012) (concluding that "'filed any complaint' is ambiguous as to whether intracompany complaints are protected activity under the FLSA," and "mov[ing] to other interpretive tools").

## 2. Statutory purpose

Congress declared its intention in FLSA "to correct and as rapidly as practicable to eliminate" labor conditions "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," without substantially reducing employment or earning power. 29 U.S.C. § 202. To achieve this goal, FLSA sets forth minimum wage standards, id. § 206, and establishes certain payroll practice requirements, id. §§ 207, 211(c), among other mandates. Because the government cannot directly monitor every employer's payroll, FLSA also creates an enforcement mechanism that relies in significant part on employees' complaints. See Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960). Congress enacted

21

section 215(a)(3) to "prevent[ ] fear of economic retaliation from inducing workers quietly to accept substandard conditions," Kasten, 131 S. Ct. at 1333 (internal quotation marks omitted), and to foster an atmosphere protective of employees who lodge such complaints.

We have repeatedly affirmed that "the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013) (internal quotation marks and alterations omitted); Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (same); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (recognizing the "remedial purpose" of FLSA). FLSA's remedial goals counsel in favor of construing the phrase "filed any complaint" in section 215(a)(3) broadly, to include intra-company complaints to employers as well as complaints to government agencies. See, e.g., Valerio, 173 F.3d at 43 (concluding that the "remedial and humanitarian purposes of [FLSA] . . . would hardly be furthered by a narrow reading of § 215(a)(3)" (internal quotation marks and citations omitted)).

22

Prohibiting retaliation against employees who make internal complaints furthers the purposes of FLSA by encouraging speedier and more efficient resolution of employee grievances, and resolving FLSA-related issues before employees have lost significant wages or other benefits. As the Supreme Court cautioned in Kasten, limiting the protections of section 215(a)(3) to employees who make complaints to government agencies "would discourage the use of desirable informal workplace grievance procedures to secure compliance with the Act." 131 S. Ct. at 1334. Even before Kasten, the First Circuit opined that "[b]y protecting only those employees who kept secret their belief that they were being illegally treated until they filed a legal proceeding," a narrow interpretation of FLSA "would discourage prior discussion of the matter between employee and employer, and would have the bizarre effect both of discouraging early settlement attempts and creating an incentive for the employer to fire an employee as soon as possible after learning the employee believed he was being treated illegally." Valerio, 173 F.3d at 43.

The protective purpose of FLSA, recognized and acted on by the Kasten Court, counsels unmistakably in favor of adopting a reading of the statutory

23

phrase "filed any complaint" that includes lodging an internal complaint with an employer.

### 3.  Administrative interpretations

We next examine another factor relevant to our analysis:  the views of the EEOC and the Secretary of Labor, as the authorities charged with enforcing FLSA.[12]  "The well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance . . . ."  United States v. Mead Corp., 533 U.S. 218, 227 (2001) (internal quotation marks and brackets omitted).  The weight appropriately afforded an agency interpretation that lacks the force of law – such as an agency manual or litigation document – depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).  In Kasten, the Supreme Court ascribed "a degree of

---

[12] Congress has authorized the Secretary of Labor to enforce FLSA's substantive provisions.  29 U.S.C. § 216(c).  Like FLSA, the EPA was originally enforced by the Secretary of Labor, but in 1977, authority to enforce the EPA and jurisdiction over its regulations were transferred to the EEOC, an independent bipartisan commission chartered by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.  See Reorganization Plan No. 1 of 1978, 5 U.S.C. App. § 1.

24

weight" to the views of the EEOC and the Secretary, finding them "reasonable" and "consistent with the Act," and explaining that "[t]he length of time the agencies have held them suggests that they reflect careful consideration, not '*post hoc* rationalizatio[n].'" 131 S. Ct. at 1335 (quoting <u>Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Automobile Ins. Co.</u>, 463 U.S. 29, 50 (1983)).

Since no later than 1998, the EEOC Compliance Manual – a document intended, among other things, to "provide[ ] guidance and instructions for investigating and analyzing claims of retaliation under the statutes enforced by the EEOC" – has provided that employees are protected from retaliation "if an individual explicitly or implicitly communicates to his or her employer or other covered entity a belief that its activity" is unlawful.[13] 2 EEOC Compliance Manual, Section 8: Retaliation § 8-II(B)(1) (May 20, 1998).[14]

The agencies' litigation positions on this question have also been consistent for decades. Both the Secretary and the EEOC have filed numerous briefs in the various Courts of Appeals maintaining that section 215(a)(3) prohibits retaliation

---

[13] The Supreme Court has described the EEOC Compliance Manual as reflecting "a body of experience and informed judgment to which courts and litigants may properly resort for guidance" and thus "entitled to a measure of respect." <u>Fed. Express Corp. v. Holowecki</u>, 552 U.S. 389, 399 (2008) (internal quotation marks omitted).

[14] <u>Available at</u> http://www.eeoc.gov/policy/docs/retal.pdf (last visited Mar. 29, 2015).

25

against employees who complain to their employers about FLSA violations. See Minor, 669 F.3d at 439 (noting that "although it is not determinative, because the Secretary and the EEOC have consistently advanced this reasonable and thoroughly considered position, it adds force to our conclusion" (internal quotation marks and alterations omitted)). We are advised that this litigation position dates back to at least 1989 for the EEOC and 1999 for the Secretary. See Brief for the EEOC as *Amicus Curiae* at 2; Brief for the Secretary of Labor as *Amicus Curiae* at 27.

For the reasons relied on by the Supreme Court in Kasten as to the question of oral complaints, then, we find that the agencies' longstanding, consistent interpretation provides additional support for the view that to "file[] any complaint" includes to submit a complaint to an employer.

**D.     To "File[] Any Complaint" Encompasses Intra-Company Complaints**

Based on the foregoing analysis, we conclude that section 215(a)(3) does not restrict its protections to employees who file formal, written complaints with government agencies. Consistent with FLSA's text and remedial purpose, with the approach adopted in Kasten, and with Congressional design to encourage

workers to report potential violations without fear of reprisal, we construe the phrase "file[] any complaint" as encompassing oral complaints made to employers in a context that makes the assertion of rights plain. Our reading derives support from the provision's consistent, longstanding interpretation by the agencies charged with its enforcement. It brings us in harmony, too, with the decisions of the other Courts of Appeals to have considered the issue.[15]

Our reading is subject, however, to certain limitations. As observed in part by the <u>Kasten</u> Court, whether the "fil[ing of a] complaint" – especially an oral complaint delivered directly to an employer – constitutes an act protected by FLSA is a context-dependent inquiry. In some circumstances, an employer may find it difficult to recognize an oral complaint as one invoking rights protected by FLSA. It seems to us inconsistent with <u>Kasten</u> to elevate a grumble in the hallway about an employer's payroll practice to a complaint "filed" with the employer within the meaning of section 215(a)(3). Indeed, the Supreme Court observed in <u>Kasten</u> that "the phrase 'filed any complaint' contemplates *some degree of formality*," 131 S. Ct. at 1334 (emphasis added), but described the level of formality necessary in terms of the employer's interests in knowing when it

---

[15] <u>See</u> <u>supra</u> note 8.

27

need take care to avoid action that might be seen as retaliatory: "where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns," id.

Recognizing the potential for ambiguity in oral communications, yet desiring not to impair the enforcement framework adopted in the statute, the Kasten Court explained that "a complaint is 'filed' [only] when a reasonable, objective person would have understood the employee to have put the employer on notice that the employee is asserting statutory rights under the Act." Id. at 1335 (internal quotation marks and alterations omitted). The employee need not invoke the Act by name, but, as the Court concluded, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Id. Defining the exact contours of that standard is beyond the scope of this opinion, but it would, for example, exclude from the concept of "fil[ing a]

28

complaint" a mere passing comment.[16]  This limitation, applied with the statute's remedial purpose in mind, informs and cabins our holding today.

We decline, however, to address here the question whether Greathouse's complaint provided an adequate basis on which to enter a default judgment against his employer on his retaliation claim.  The decision whether to enter default judgment is committed to the district court's discretion, see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 131 (2d Cir. 2011), as is the decision whether to conduct a hearing before deciding the default judgment motion, see Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009).  See also Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . conduct an accounting; . . . determine the amount of damages; . . . establish the truth of any allegation by evidence; or . . . investigate any other matter.").[17]  We therefore remand the cause

---

[16] The state of the record in Lambert was such that it is difficult to ascertain whether the complaint and the setting in which it was communicated satisfied the conditions that the Kasten majority identified as necessary to give the employer "fair notice that a grievance has been lodged."  Kasten, 131 S. Ct. at 1334.  We note further that the complaints made to the supervisor in Lambert were particularly ill-documented and removed in time from the allegedly discriminatory action.

[17] Judge Korman, concurring in part and dissenting in part, infra, highlights, among other passages, text from Trans World Airlines, Inc. v. Hughes, 449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973), in which this Court asserted that a "default ha[s] the effect of admitting or establishing that the acts pleaded in the complaint violated the [applicable] law[]," id. at 70.  He suggests, on this basis and in light of defendants' defaults, that the District Court was required to award

29

to the District Court for a ruling in the first instance on Greathouse's default judgment motion with respect to his claim for unlawful retaliation under FLSA.

**CONCLUSION**

In sum, we overrule what is left of our holding in <u>Lambert v. Genesee Hospital</u>, 10 F.3d 46 (2d Cir. 1993), and conclude, in accordance with all of our sister circuits to have addressed the issue, that section 215(a)(3) prohibits retaliation against employees who orally complain to their employers, so long as their complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." <u>Kasten</u>, 131 S. Ct. at 1335. We therefore VACATE the District Court's judgment insofar as it relied on <u>Lambert</u>, and REMAND the cause to the District Court to determine, in the first

---

Greathouse damages on his section 215(a)(3) retaliation claim, contending that the defaults conclusively established defendants' liability—and were not simply an admission to the well-pleaded allegations. But even if this passage from <u>Trans World Airlines</u> remains good law in light of this Court's subsequent jurisprudence, <u>see, e.g.</u>, <u>Finkel</u>, 577 F.3d at 84 (The district court "is . . . required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law."), the Court in that case did not hold that a district court lacks discretion to investigate the basis for a plaintiff's claims before deciding whether to grant default judgment, <u>see generally</u> 10A Wright, Miller & Kane, Federal Practice & Procedure § 2684, at 28 ("The court has discretion to decide whether to enter a judgment by default, . . . and Rule 55(b)(2) empowers the district judge to hold hearings or 'order such references as it deems necessary and proper' to aid its execution of this discretion.").

instance, whether to grant Greathouse a default judgment on his retaliation claim under section 215(a)(3), and if so, what damages, if any, Greathouse is entitled to recover therefor.[18]

---

[18] The District Court deemed Greathouse's NYLL retaliation claim waived because he did not request any related damages in his submissions to the Magistrate Judge. Greathouse, 2012 WL 5185591, at *6. Since Greathouse concedes that if he succeeds on his FLSA retaliation claim under 29 U.S.C. § 215(a)(3), he may not recover duplicative damages under the NYLL, we do not reach his NYLL claim here.

Edward R. Korman, District Judge, concurring in part, dissenting in part:

Darnell Greathouse ("Greathouse") complained orally to his employer, JHS Security, Inc. ("JHS"), that he had not received a paycheck in several months. Greathouse alleged that he was terminated as a result. The majority recognizes that, under *Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir. 1993) (Walker, J.), Greathouse would be precluded from recovering on his FLSA retaliation claim, because the complaint that prompted his retaliatory dismissal was made to his employer, and not to a government agency. Nevertheless, it declines to follow *Lambert* because it concludes that it is no longer good law after *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011). Moreover, because any damage award predicated on New York Labor Law ("NYLL")—if such an award were made—would duplicate Greathouse's recovery on the Fair Labor Standards Act ("FLSA") retaliation claim, the majority declines to address the issue whether he waived his claim for damages under the NYLL. This assumes that on remand, contrary to my understanding of *Kasten*, Greathouse would be entitled to recover damages if *Lambert* is overruled.

I agree that the district court erred by denying an award of damages on the FLSA retaliation cause of action. I would hold that Greathouse is entitled to an award of damages in his favor pursuant to the anti-retaliation provision of the FLSA § 215(a)(3) and on his pendent NYLL § 215(2) claim. I reach this conclusion because the procedural posture of this case makes it inappropriate to do anything other than enter a default judgment on both causes of action after the failure of the defendants to appear.

## BACKGROUND

I begin with a brief overview of the procedural history of the case. On March 15, 2012, the district judge ordered "that a default judgment be entered against [the] defendants . . . with

1

the amount of the judgment to be determined after an inquest before . . . the magistrate judge." Default J. & Inquest Order, *Greathouse v. JHS Sec., Inc.*, No. 11-cv-7845 (S.D.N.Y. March 15, 2012), ECF No. 15. On September 7, 2012, the magistrate judge issued a Report & Recommendation ("R&R") that acknowledged that "[b]ecause the default establishes defendants' liability . . . the only remaining issue is whether plaintiffs [sic] have supplied adequate proof of their damages." R&R, *Greathouse v. JHS Sec., Inc.*, No. 11-cv-7845 (S.D.N.Y. Sept. 7, 2012) (*citing Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)), ECF No. 26 at 2. Nevertheless, rather than address the issue of whether plaintiff had supplied adequate proof of his damages, he ignored the direction of the district judge, as well as the rule of law that he had previously cited, and went on to address the issue of whether the allegations in the complaint were sufficient to state a claim for relief.

Specifically, as relevant here, he found deficient the cause of action alleging that Greathouse was terminated because he had complained to his superior about the non-payment of wages. Relying on *Lambert*, he concluded that, "[b]ecause Greathouse does not allege that his termination was in response to the submission of a complaint to some relevant governmental or other prosecutorial authority, Greathouse fails to state a claim for retaliation under the FLSA." *Id.* at 15. Consequently, he declined to recommend that damages be awarded on that claim, even though Greathouse presented evidence documenting the damages that he suffered as a result of the retaliatory termination. The magistrate judge did not address the plaintiff's NYLL anti-retaliation claim, which was not dependent on whether the employee's grievance was voiced to a judicial or administrative body.

Greathouse appealed to the district judge, who adopted the recommendation of the magistrate judge that the allegations failed to state a claim under the FLSA. *Greathouse v. JHS*

*Sec. Inc.*, No. 11 CIV. 7845 (PAE) (GWG), 2012 WL 5185591, at \*5 (S.D.N.Y. Oct. 19, 2012). Moreover, he rejected Greathouse's objection that he was entitled to a judgment under the NYLL retaliation statute because Greathouse did not refer to that cause of action in the findings of fact and conclusions of law that he filed with the magistrate judge. *Id.* at \*6. While he was not required to do so, the district judge held, *sua sponte*, that this constituted a waiver of Greathouse's objection. On appeal, we appointed Vilia B. Hayes, a partner at Hughes Hubbard & Reed LLP and the then-President-elect of the Federal Bar Council, to argue on behalf of the absent defendants in favor of the judgment below to the extent that it relied on *Lambert*.

## DISCUSSION

### I.       The Effect of the Default Judgment

Regardless of whether the majority's decision to overrule *Lambert* is correct—an issue that I address later in this opinion—this is not the appropriate case in which to reconsider that decision. Specifically, we should exercise restraint here in light of this case's troubling procedural posture, arising as it does from a default judgment. There is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judges deciding the case. The way to avoid such an anomalous procedure here is to award damages based on the default judgment entered by the district court against JHS and its owner and president, Melvin Wilcox ("Wilcox"), who failed to appear in the district court. I proceed to discuss the rules governing the entry of default judgments and demonstrate that the entry of default judgment would be particularly appropriate, if it was not compelled, in this case.

### A.  The Default Judgment and the FLSA Retaliation Cause of Action

Fed. R. Civ. P. 55(b) sets out the procedures to be followed when a defendant defaults by failing to appear. First, Rule 55(b)(1) provides that, "[i]f the plaintiff's claim is for a sum certain

or a sum that can be made certain by computation, the clerk . . . *must* enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1) (emphasis added). By these terms, the entry of default judgment for the damages requested is mandatory and there is no room for discretion to deny an award of damages because the complaint does not state a claim for relief.

Rule 55(b)(2) provides in pertinent part that "[i]n all other cases," which would presumably include cases in which damages are not even sought, as well as cases where damages claimed are other than a sum certain, "[t]he court may conduct hearings or make referrals . . . when, *to enter or effectuate judgment*, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2) (emphasis added). There is no reason why the Federal Rules of Civil Procedure would mandate the entry of a judgment without an examination of the allegations of the complaint where the amount sought is for a sum certain, but permit such an inquiry simply because the damages are not certain. The reason for the discretion vested in Rule 55(b)(2) is to permit proceedings facilitating the district judge's determination of damages or other relief sought in the complaint that fall within the discretion of the trier of fact. Thus, in *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974), we held that a hearing was required to determine punitive damages because such damages were within the discretion of the trier of fact and were "clearly not liquidated or computable and there is no basis at all here to award the amount set forth in the complaint."

This is not to say that courts are obligated to enter default judgments no matter how frivolous the suit, so long as the defendants have defaulted. Courts have both statutory and

inherent authority to *sua sponte* dismiss frivolous suits. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[W]e hold that district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee . . . ."). Indeed, in cases proceeding *in forma pauperis*, the discretion of the district court may even be greater. *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The standard for frivolousness does not encompass otherwise well-pled claims for relief on the ground that they fail to state a claim, although there may be some overlap between those two classes of suits. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Frivolous suits are those that lack "an arguable basis either in law or fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325). As the Supreme Court explained in *Neitzke*,

> Close questions of federal law, including claims filed pursuant to 42 U.S.C. § 1983, have on a number of occasions arisen on motions to dismiss for failure to state a claim, and have been substantial enough to warrant this Court's granting review, under its certiorari jurisdiction, to resolve them [even though they were initially dismissed]. It can hardly be said that the substantial legal claims raised in these cases were so defective that they should never have been brought at the outset. To term these claims frivolous is to distort measurably the meaning of frivolousness both in common and legal parlance. Indeed, we recently reviewed the dismissal under Rule 12(b)(6) of a complaint based on 42 U.S.C. § 1983 and found by a 9-to-0 vote that it had, in fact, stated a cognizable claim—a powerful illustration that a finding of a failure to state a claim does not invariably mean that the claim is without arguable merit.

*Neitzke*, 490 U.S. at 328-29 (internal citations omitted). In this case, there has never been a suggestion that plaintiff's suit is frivolous, even as there has been much discussion as to whether it adequately states a claim.

Moreover, an aggrieved party against whom a default judgment has been entered also has recourse to set aside the judgment after the fact. Rule 55(c) confers discretion on the district

court to provide for relief from the entry of a default judgment for "good cause shown," and that a default judgment may be vacated "in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c); *see* 10A Wright, Miller & Kane § 2692 at 90, § 2693 at 103-04 ("[S]everal courts [including the Second Circuit] have concluded that Rules 55(c) and 60(b) express a policy of liberality toward motions for relief from default entries and default judgments," and "they have ruled that on a motion for relief from the entry of a default or a default judgment, all doubts should be resolved in favor of the party seeking relief.); *see also Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983) (same). This provides significant protection against any miscarriage of justice that may result from a defendant's decision not to appear and a resulting default judgment.

In light of these protections, there seems little justification for granting defaulting parties the benefits they received in this case. Those benefits were substantial. The magistrate in the case essentially took it upon himself to act as counsel for parties who had not bothered themselves to appear in court. Acting as both counsel and judge, the magistrate—affirmed by the district judge—*sua sponte* denied damages on a previously entered default judgment on the basis of a defense that the defendants may have waived if they had appeared and not timely raised it. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006) (holding that an objection that a complaint failed to state a claim could not be asserted post-judgment). Then, we appointed counsel to defend on appeal the lawyering of these judicial officers on behalf of parties who never even appeared in court. Thus, through the magistrate judge, the district court judge, and the able counsel appointed by this Court, defendants may have obtained far more capable representation than they would have obtained had they not chosen voluntarily to default and instead retained their own counsel.

Separate and apart from the manner in which Rule 55(b) should be construed, we held in *Trans World Airlines v. Hughes* that, while a hearing was necessary on the issue of damages, "there was no burden on [the plaintiff] to show that any of [the defendant's] acts pleaded in the complaint violated the antitrust laws nor to show that those acts caused the well-pleaded injuries, except as we have indicated that it had to for the purpose of establishing the extent of the injury caused [to the plaintiff], in dollars and cents." 449 F.2d 51, 70 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973). On the contrary, we held that "[t]he default had the effect of admitting or establishing that the acts pleaded in the complaint violated the antitrust laws and that those acts caused injury to TWA in the respects there alleged." *Id.*

We reiterated this holding in *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995), where Judge McLaughlin observed "[t]here is no question that a default judgment establishes liability." Indeed, writing in a later case, Judge McLaughlin held that this distinguishes default judgments from unopposed motions for summary judgment. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). There, the district judge granted an unopposed motion for summary judgment after assuming the truth of the allegations in the complaint and failing to analyze any of the complex legal and factual issues. *Id.* at 242, 245. Judge McLaughlin suggested that the district judge there had confused the procedure for addressing a motion for summary judgment with the procedure for addressing a default judgment. *Vermont Teddy Bear*, 373 F.3d at 242; *see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014).

The majority expresses doubt, albeit in a footnote, whether these cases and, more particularly, *Trans World Airlines* "remain[] good law in light of this court's subsequent jurisprudence." Majority Op. at 29 n.17 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir.

7

2009)).  This argument overlooks the principle that a panel of this Court is "bound by the decisions of prior panels until such time as they are overruled either by an *en banc* panel of our Court or by the Supreme Court."  *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009) (internal quotation marks omitted).  Neither *Trans World Airlines* nor the other cases which echo its language have been overruled in this manner or by the mini-*en banc* procedure that the majority employs here.  Indeed, *Finkel v. Romanowicz*, upon which the majority relies, does not even acknowledge the existence of these cases.

While there is dictum in *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), suggesting that a district judge "need not agree that the alleged facts constitute a valid cause of action," that case did not allude to the prior Second Circuit cases to the contrary, and relied solely on the then-current version of § 2688 of Wright & Miller, which has not changed. *Id.*  The latter, in turn, had relied principally on *Ohio Cent. R. Co. v. Central Trust Co.*, 133 U.S. 83 (1890).  10A Charles Alan Wright, Alan R. Miller & Mary Kane, *Federal Practice and Procedure* § 2688 at 60 (3d ed. 1998).  In that case, the Supreme Court held only that the complaint "was taken as confessed; but that fact did not, in itself justify giving complainant more than it claimed."  *Ohio Cent. R. Co.*, 133 U.S. at 90.  In this context, the Supreme Court observed that, "under the rules and practice of this court in equity" a defaulting defendant is not precluded "on appeal . . . from insisting that the averments contained in it do not justify the decree."  *Id.* at 90-91.  Nevertheless, this language assumes a true adversary proceeding in which the defendant appears and challenges or asks to be relieved of the default judgment.  *Ohio Central* does not sanction the proceeding in this case in which multiple judges—indeed, the judicial system itself—assumes an adversarial position on behalf of defaulting defendants.

8

Moreover, the then-prevailing rules and practices of the Supreme Court preceded the adoption of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 12(h), which requires that a motion to dismiss a complaint for failure to state a claim must be made before judgment is entered in the district court, otherwise it is waived and cannot be raised on appeal. *See Arbaugh*, 546 U.S. at 506-07. Thus, if a defendant appeared and failed to timely challenge the allegations in the complaint, it would be deemed waived. By contrast, the majority holds that a defendant who defaults does not waive the defense and is in a better position than one who appears.

Nevertheless, there is recent Second Circuit authority relying solely on the dictum in *Au Bon Pain*, and overlooking the Second Circuit cases to the contrary and discussed above, that hold that a district court has discretion to determine whether the allegations in the complaint, taken as true, establish a cause of action. *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In two of these cases, the language can arguably be viewed as dictum because the alternative holding in one case was that the complaint stated a cause of action, *Finkel*, 577 F.3d at 84, and the holding in the other case that the issue was procedurally forfeited, *Mickalis*, 645 F.3d at 137. Moreover, in the third case the allegations in the complaint were not well-pleaded because they not only failed to support the theory of liability alleged, but "actually disproved it." *Priestley*, 647 F.3d at 506.[1] Under these circumstances, we need not resolve the conflict between the earlier and later cases because the district court ordered "that a default judgment be entered against [the] defendants . . . with the amount of the judgment to be determined after an inquest before . . . the magistrate judge." Default J. & Inquest Order, *Greathouse v. JHS Sec., Inc.*, No. 11-cv-7845 (S.D.N.Y. March 15,

---

[1] The term "well-pleaded allegation" is a "term of art" that does not encompass the issue of whether the allegations in a complaint are sufficient to state a claim. *See Trans World Airlines*, 449 F.2d at 63 ("For example, an allegation made indefinite or erroneous by other allegations in the same complaint is not a well-pleaded allegation.").

2012), ECF No. 15. The problem here is not the failure of the district judge to enter a default judgment on the basis of the defendants' failure to appear. Instead, it is the failure of the magistrate judge to follow the order of the district judge.

### B. The Default Judgment and the NYLL Retaliation Cause of Action

The district judge also rejected the plaintiff's unopposed objection to the R&R that the magistrate judge failed to award damages on the NYLL retaliation claim. *Greathouse v. JHS Sec. Inc.*, No. 11 CIV. 7845 (PAE) (GWG), 2012 WL 5185591, at \*6 (S.D.N.Y. Oct. 19, 2012). He reasoned that this claim had not been addressed because the plaintiff's "proposed findings of fact and conclusions of law did not make any request for damages on account of that claim," and "[g]enerally, courts do not consider new arguments . . . raised in objections to a magistrate judge's report and recommendation that were not raised, and thus were not considered, by the magistrate judge." *Id.* There are two problems with this holding.

First, Greathouse's proposed findings of fact and conclusions of law can be reasonably be read as seeking damages on both the FLSA and NYLL retaliation causes of action. Proposed Findings of Fact & Conclusions of Law, *Greathouse v. JHS Sec., Inc.*, No. 11-cv-7845 (S.D.N.Y. May 8, 2012), ECF No. 22. In that document, Greathouse argued that "[i]n addition to the damages related to the nonpayment and underpayment of wages, Plaintiff is also entitled to recover for damages related to his retaliation *claims*." *Id* at 13 (emphasis added). The word "claims," by its plural form, clearly referred to both retaliation claims, not simply the FLSA claim. While Greathouse addressed the issue of whether he could recover on the FLSA claim in light of *Lambert* and *Kasten*, he had no reason to specifically address this issue with respect to the NYLL retaliation claim because unlike the FLSA claim as construed in *Lambert*, the NYLL claim was not dependent on whether the complaint which caused his employer to retaliate

10

against the plaintiff was made to his supervisor, rather than a governmental agency. Under these circumstances, his failure to specifically address the latter cause of action should not have been viewed by the district court as a waiver of the claim.

Second, the district judge may have unintentionally led Greathouse astray by directing an inquest solely on the issue of damages. In so doing, he may have lulled Greathouse into believing that the liability phase of the case was over. Greathouse had no reason explicitly justify his NYLL claim because he had already prevailed on his FLSA claim—or so he (reasonably) thought. Had he known there was a problem with the FLSA claim, he might have acted to more explicitly address his NYLL claim, as he ultimately did when he objected to the R&R.

Finally, the so-called "general rule," on which the district judge relied, is a judge-made rule that should not automatically be applied without regard to the circumstances of a particular case. Indeed, we have held that "an appellate court has discretion . . . to review of its own motion any error not saved by a timely objection." *Curko v. William & Son, Corp.*, 294 F.2d 410, 413-14 (2d Cir. 1961); *see also Valdez ex rel. Donnelly v. U.S.*, 518 F.3d 173, 181 (2d Cir. 2008). We do so when necessary to avoid a miscarriage of justice or to remedy "an obvious instance of misapplied law." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 55 (2d Cir. 2000). Moreover, while we apply a stringent standard for our consideration of trial errors, "which implicate the significant policy considerations underlying the need for a timely objection, namely, the avoidance of an unnecessary retrial," we have suggested that a more forgiving standard is justified when such policy considerations are not present. *Valdez*, 518 F.3d at 182. Indeed, in *Williams v. City of New York,* 508 F.2d 356, 362 (2d Cir. 1974), we held that one consideration weighing in favor of noticing a plain error in a jury instruction for punitive

damages was "the remediability of [the] error without a new trial below." Indeed, in *United States v. Male Juvenile*, 121 F.3d 34, 38-39 (2d Cir. 1997), we held that a district judge had discretion to reconsider a ruling of the magistrate judge even where no objection to it was filed.

In the present case, the failure of the magistrate judge to award damages on the NYLL retaliation claim deprived Greathouse of relief to which he was entitled based on the defendants' outrageous conduct. Moreover, a remand to the magistrate judge would not have involved a duplication of effort in which he had already engaged when he conducted the inquest on damages. A remand in the present case would not involve reopening a hearing at which testimony was taken. On the contrary, the magistrate judge did not address the amount of the damage award on either the FLSA retaliation or NYLL retaliation claim. A remand would simply require him to do a mathematical calculation based on the information that Greathouse has previously provided regarding the damages to which he was entitled as a result of his retaliatory termination—a much easier task than the one the majority dumps in his lap on remand.

## II.     The Validity of *Lambert*

My dissent is not dependent on the continued validity of *Lambert*. Nevertheless, I add these words because it adds further support to my view that this case is not the appropriate one to reach that issue. In *Lambert*, we explicitly held that the retaliation cause of action created by the FLSA "does not encompass [retaliation for] complaints made to a supervisor." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993). The case did not turn on whether the complaint was oral or written. Instead, it turned on the separate issue of the proper recipient of the complaint that triggered retaliatory action by the employer. Judge Walker, writing for the panel, explained that, while a retaliation cause of action under Title VII could be based on a complaint

made to an employer, the language of the FLSA, as amended by the Equal Pay Act ("EPA"), was

much narrower in scope.

> Title VII broadly provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The phrase "opposed any practice" encompasses an individual's complaints to supervisors regardless of whether she also files an EEOC charge.
>
> In contrast, FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). The EPA is an amendment to the FLSA and is codified under the same chapter; thus retaliation for filing EPA complaints falls under § 215(a)(3). The plain language of this provision limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor.

*Id.*

In reaching this conclusion, Judge Walker acknowledged that it was contrary to the

holdings in a number of circuits and to the EEOC's "interpretation in its compliance manual that

the EPA retaliation provisions should encompass informal workplace complaints." *Id.*

Nevertheless, he explained that "[b]ecause we hold that the statute's language is plain and

unambiguous we need not defer to the EEOC's interpretation in its compliance manual that the

EPA retaliation provisions should encompass informal workplace complaints." *Id.*

The Supreme Court has subsequently held that a complaint by an employee that triggers

retaliatory action by his employer need not be in writing. *Kasten v. Saint-Gobain Performance*

*Plastics Corp.*, 131 S. Ct. 1325 (2011). Unlike *Lambert*, which focused on the language relating

to the issue of with whom a complaint must be filed, *Kasten* focused solely on the issue of whether an oral complaint is encompassed within the meaning of the word "filed." *Id.* at 1331. Relying on the "dictionary definitions" of the term, research that disclosed "that legislators, administrators, and judges have all sometimes used the word 'file' in conjunction with oral statements," and "that oral filings were a known phenomenon at the time of the Act's passage," the Court concluded that "[t]he phrase 'filed any complaint' might, or might not, encompass oral complaints." *Id.* at 1331-32. Indeed, Justice Breyer, writing for the majority, observed that oral complaints can be made to government agencies through "hotlines, interviews, and other oral methods of receiving complaints." *Kasten*, 131 S. Ct. at 1334. Moreover, the Department of Labor, in accordance with its position that the FLSA retaliation provision covered oral complaints, had "creat[ed] a hotline to receive oral complaints." *Id.* at 1335. Consequently, the Supreme Court looked at other factors relating to statutory interpretation to hold that the word "filed" encompassed oral complaints. *Id.* at 1332-36.

Nevertheless, *Kasten* expressly left open the issue we decided in *Lambert* that a complaint—oral or written—made only to a supervisor may not provide the predicate for an FLSA retaliation claim. *Id.* at 1336. While the complaint in *Kasten* was made to a supervisor, the employer, Saint Gobain, did not properly preserve the issue for consideration by the Supreme Court. *Id.* Nor could Saint Gobain take advantage of an exception that would have permitted the Supreme Court to consider the issue on the ground that it was a necessary "predicate to an intelligent resolution of the oral written question that [it] granted certiorari to decide." *Id.* (internal quotation marks omitted). As Justice Breyer succinctly stated: "That is to say, we can decide the oral/written question separately—on its own. Thus, we state no view on the merits of Saint-Gobain's alternative claim." *Id.* Nevertheless, the majority declines to take Justice Breyer

at his word, and insists that *Kasten* compels us to consider in this case the issue that the Supreme Court declined to address. I do not agree that we must do so here.

I observed earlier that a panel of this Court is "bound by the decisions of prior panels until such time as they are overruled either by an *en banc* panel of our Court or by the Supreme Court." *Shipping Corp.*, 585 F.3d at 67 (internal quotation marks omitted). Where an intervening Supreme Court decision "casts doubt on the prior ruling," however, that general rule does not apply. *Finkel v. Stratton Corp.*, 962 F.2d 169, 174-75 (2d Cir. 1992); *see also In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010); *Union of Needletrades, Indus. & Textile Emps. v. INS*, 336 F.3d 200, 2010 (2d Cir. 2003). The intervening decision "need not address the precise issue decided by the panel for this exception to apply." *In re Zarnel*, 619 F.3d at 168; *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 274 (2d Cir. 2005) (overruling prior panel when intervening Supreme Court decision "entirely undermine[d]" the assumption underlying the prior panel's statutory analysis).

*In re Zarnel* provides a particularly informative example of a case in which we overruled a prior holding based on an intervening Supreme Court ruling. The prior Second Circuit case held that the failure of the allegations in the complaint to satisfy the requirements to obtain relief under the statute deprived the district court of subject matter jurisdiction. *In re BDC 56 LLC*, 330 F.3d 111 (2d Cir. 2003). A subsequent Supreme Court ruling set out a standard for resolving when a statutory limitation on coverage is jurisdictional. *Arbaugh*, 546 U.S. at 515-16. More specifically, it held "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."

15

*Id.* (footnote and internal citation omitted). The statute at issue in *In re Zarnel*, was not the same statute that we had construed in *In re BDC 56*. Nevertheless, we explained that the standard set out in *Arbaugh* compelled the conclusion that the limitation on statutory coverage at issue in *In re BDC 56* was not jurisdictional, and that *In re BDC 56* should be overruled. *In re Zarnel*, 619 F.3d at 169 ("We find that, in light of *Arbaugh*, *In re BDC LLC* can no longer be considered good law on this point.").

The circumstances here do not approach those in *In re Zarnel*, if only because the Supreme Court in *Kasten* left open the issue that *Lambert* decided, and did not adopt a broad rule that would cover the facts in that case. Nor does the fact that "[t]he *Lambert* court's conclusion . . . is contrary to the weight of authority in our sister circuits," as the majority observes, necessarily provide a basis for rejecting its holding here.[2] Indeed, Judge Walker's unanimous opinion in *Lambert* acknowledged "that a number of our sister circuits have held to the contrary." *Lambert* 10 F.3d at 55. Significantly, he cited with approval a dissenting opinion in one of those cases. *Id.* (citing *EEOC v. Romeo Community Sch.*, 976 F.2d 985, 990 (6th Cir. 1992) (Surheinrich, J., dissenting)). Moreover, he also declined to adopt the EEOC's interpretation of the statute in its compliance manual. *Lambert*, 10 F.3d at 55.

In sum, three distinguished judges of the Second Circuit (Judges Lumbard, Winter, and Walker) and the only two Supreme Court Justices (Justices Scalia and Thomas) who have spoken to the issue agree that the FLSA does not encompass complaints made to a supervisor. Indeed, Justice Scalia, who reached the issue of to whom a complaint must be filed, makes a compelling argument supporting and supplementing the holding in *Lambert*. *See Kasten*, 131 S. Ct at 1336-

---

[2] The fact that other circuits may disagree is not an answer to this argument. Indeed, it is worth recalling that in *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court rejected the unanimous construction of the mail fraud statute, 18 U.S.C. § 1341, by all of the circuits. *See id.* at 376 (Stevens, J., dissenting).

16

41 (Scalia, J., dissenting).[3] The *Kasten* majority did not respond to Justice Scalia's argument, because it declined to reach the issue, and the majority here likewise does not do so. While I do not suggest that the majority's position is unreasonable, *Lambert*'s continuing validity should not be resolved in the unusual procedural context of this case.

### III.    The Application of *Kasten*

There is one more reason why this case is not an appropriate one to reconsider *Lambert*. Simply stated, Greathouse cannot recover under the standard set out in *Kasten*. Even if the Supreme Court had overruled *Lambert*, the oral complaint made by the plaintiff in this case does not satisfy the standard the Supreme Court prescribed in *Kasten* for an employee to prevail on an FLSA retaliation cause of action. In that case, the Supreme Court described an oral complaint that would satisfy the FLSA as follows:

> To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones.

131 S. Ct. at 1335. The oral complaint in this case does not meet this standard. Nor does the majority hold that it does. As described in the majority opinion, Greathouse complained to the defendant Wilcox, the owner and president of JHS, that he had not been paid in several months. If this complaint had been made to a government agency, such as the Department of Labor, the very nature of the complaint and the entity to which it was made would have put the employer on notice of an assertion of rights protected by the statute. *Id.* at 1341 (Scalia, J., dissenting)

---

[3] While Justice Scalia's dissent in *Kasten* voiced concerns over the effect that the analysis in *Kasten* would have on the issue in the present case, it is helpful to recall Judge Friendly's admonition that "dissenting opinions are not always a reliable guide to the meaning of the majority; often their predictions partake of Cassandra's gloom more than of her accuracy." *Local 1545 United Broth. Of Carpenters and Joiners of America, AFL-CIO v. Vincent*, 286 F.2d 127, 132 (2d Cir. 1960).

("Filing a complaint with a judicial or administrative body is quite obviously an unambiguous assertion of one's rights.").

Greathouse's simple complaint to JHS when he was not paid did not put the employer on such notice. Indeed, the explicit complaint made by the employee in *Kasten* provides a useful contrast. *Id.* at 1329-30. There, the employee—Kasten—complained that the location of time clocks "prevented workers from receiving credit for the time they spent putting on and taking off their work clothes." *Id.* at 1329. Kasten not only repeatedly called the issue to Saint Grobain's attention in accordance with the latter's internal grievance review procedure, he also told his shift supervisor that "it was illegal for the time clocks to be where they were." *Id.* at 1330. Moreover, he told a human resources employee that "'if they were challenged on' the location in court, 'they would lose.'" *Id.* Finally, he told his lead operator that he "was thinking about starting a lawsuit about the placement of the time clocks." *Id.* The oral complaint in this case does not come close to approaching the specificity and clarity of the complaint in *Kasten*. By leaving this question undecided, the majority sets this case on a potentially wasteful and circuitous route. If the district court finds that the notice given to the employer was insufficient, then the case would presumably be headed back here once again and we would again be in the position of considering whether to appoint counsel for a defaulting defendant.

In conclusion, I would reverse the judgment of the district court and remand for the calculation of damages on Greathouse's claim of retaliatory termination. Because the damages overlap, and because Greathouse is not entitled to a double recovery, it is not relevant on which cause of action the district judge makes that determination. Unlike the majority, I would not remand to the district court to determine whether the complaint that Greathouse made to his employer provided a sufficient predicate to an FLSA retaliation cause of action.